# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2021

Lyle W. Cayce
Clerk

No. 20-11016

United States of America,

*Plaintiff—Appellee*,

*versus*

Ernesto Sandoval Martinez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-492-1

Before Elrod, Southwick, and Costa, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

Ernesto Sandoval Martinez pleaded guilty to a drug conspiracy charge. He did so after authorities discovered cocaine and other drugs in the back of his tobacco shop. Among the items seized were: bags of marijuana, jars containing marijuana cigarettes, edibles infused with tetrahydrocannabinol (THC), liquid THC cartridges, a plastic bag filled with Xanex pills, and "numerous" baggies of cocaine.

This appeal involves something else the authorities found—$12,424 in cash. Instead of attributing that cash, at least in part, to Sandoval

No. 20-11016

Martinez's legitimate tobacco sales or to any of the various other drugs found in the shop, the court treated it entirely as proceeds from cocaine transactions. That resulted in a higher recommended sentencing range than Sandoval Martinez would have otherwise received. He challenges the cash-to-cocaine conversion, arguing that it was error to treat the entire sum as cocaine proceeds. We agree and vacate the sentence.

I.

Sandoval Martinez owned E.T.'s Tobacco Shop in Dallas. The shop sold more than just tobacco. After undercover agents conducted five controlled buys of cocaine from the shop, authorities obtained a warrant to search the premises. Inside, they found drugs, cash, and firearms. They then arrested Sandoval Martinez and his coconspirators.

Although Sandoval Martinez pleaded guilty to a cocaine offense, under relevant conduct principles he could be held responsible at sentencing for the various types of drugs he was dealing. U.S.S.G. § 1B1.3. When different drugs are involved, Sentencing Guidelines tables convert the weight of different drugs to a common metric—called "converted drug weight." *See* U.S.S.G. § 2D1.1 cmt. nn.7 & 8(B). The conversion rate differs depending on the type of drug, with marijuana essentially serving as the base. *See id.* at n.8(D). One gram of marijuana thus equates to one gram of converted drug weight. *Id.* One gram of cocaine, however, converts to 200 grams of converted drug weight. *Id.*

At first, the presentence report (PSR) treated the seized $12,424 as marijuana proceeds. After some objections and revisions, it ended up treating the cash as cocaine proceeds instead, which resulted in a much higher converted drug weight. The probation officer justified this by noting that "the main source of the controlled purchases" was cocaine, even though those purchases amounted to no more than a few hundred dollars in total. The PSR's final total converted drug weight, including the cash as cocaine

No. 20-11016

proceeds, was 103.10 kilograms. That amount is just above the 100-kilogram threshold for a base offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8). Attributing all the seized cash to cocaine sales thus made Sandoval Martinez's offense level higher than it otherwise would have been.

At sentencing, Sandoval Martinez objected to the cash-to-cocaine conversion, arguing that the PSR arbitrarily failed to consider other possible sources of the money. Without providing reasons, the district court overruled the objection and adopted the PSR. But the court varied below the Guidelines range for two reasons: one relating to calculating the weight of the THC edibles[1] and another concerning the leadership enhancement because of the small scope of the enterprise. With these variances, the court calculated Sandoval Martinez's total offense level to be 20, which when combined with his Criminal History Category of I, resulted in a sentencing range of 33 to 41 months.[2] The court sentenced him to 37 months in prison and three years of supervised release.

## II.

Sandoval Martinez renews his argument that the district court erred in treating all the cash found in his shop as proceeds from cocaine sales. The

---

[1] Before his sentencing hearing, Sandoval Martinez filed a motion for a downward variance arguing that the THC quantity attributed to him should consist only of the amount stated on the packaging, instead of the (much higher) weight of the edible gummies and their packaging. Because of the significant discrepancy, the government indicated that it would not object to a downward variance. This does not affect our analysis, however.

[2] The court characterized these as variances, rather than actual departures, so it is unclear how this resulted in a new Guidelines range. *See United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (describing a "departure" as a change in the Guidelines range that still results in a sentence "imposed under the framework set out in the Guidelines" and a "variance" as "a sentence that is outside the [G]uidelines framework" altogether). Indeed, the post-sentencing Statement of Reasons states that the Guidelines range accepted by the court is 87 to 108 months, not the reduced variance "range" of 33 to 41 months.

government counters that the conversion was justified because of the agents' cocaine purchases and a coconspirator's admission that the shop sold cocaine. We review the district court's drug quantity calculation—which relied exclusively on the PSR—for clear error. *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005).

A sentencing court can "extrapolate the quantity [of drugs] from any information that has sufficient indicia of reliability to support its probable accuracy." *United States v. Gentry*, 941 F.3d 767, 788 (5th Cir. 2019) (quoting *United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019)). Generally, PSRs do bear "sufficient indicia of reliability" to be considered by the court in making factual determinations like drug quantity. *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). But "mere inclusion" in the PSR does not render a fact reliable when it otherwise lacks an adequate evidentiary basis. *Gentry*, 941 F.3d at 788 (quoting *Harris*, 702 F.3d at 230 n.2). Sentencing courts cannot rely on a PSR's "speculative inference[s]" and "conclusionary statements" when those statements find no support in the record. *United States v. Rome*, 207 F.3d 251, 254, 256 (5th Cir. 2000). A court that does so commits clear error. *Gentry*, 941 F.3d at 788.

It was clear error to treat all the seized cash as cocaine proceeds. There are too many possible alternative sources for the income, including lawful proceeds from tobacco sales and proceeds from the sale of marijuana, THC, or Xanex, all of which authorities seized from the shop. *See United States v. Fitzgerald*, 89 F.3d 218, 223–24 (5th Cir. 1996) (considering whether the defendant had a source of legal income as a factor when determining whether seized cash represented proceeds of drug transactions); *United States v. Harrison*, 439 F. App'x 378, 381 (5th Cir. 2011) (unpublished) (same). Tax records and monthly revenue reports from the tobacco shop support Sandoval Martinez's argument that at least some of the money likely came tobacco sales. *Contrast United States v. Lucio*, 985 F.3d 482, 488 (2021)

(holding it was acceptable for court to treat cash seized during drug bust as meth when defendant was unemployed and "undisputedly a meth dealer . . . [who] regularly dealt in kilogram quantities . . . easily sufficient to account for the amount of cash seized").

In addition to the likelihood that some of the cash came from lawful tobacco sales, the evidence shows that cocaine was not the only source of illegal proceeds. Authorities found meaningful amounts of other drugs in the shop, including marijuana and THC. *See United States v. Sandridge*, 385 F.3d 1032, 1037–38 (6th Cir. 2004) (holding that sentencing court erred in treating cash found in defendant's car solely as cocaine when evidence showed he possessed both cocaine and marijuana). The main reason the PSR cited for treating 100% of the money as cocaine proceeds—that all of the controlled buys were for cocaine—ignores that the undercover agents asked to buy cocaine. The controlled buys thus do not fully reflect the trafficking that occurred at the shop.

We therefore conclude it was clear error to treat all the cash as cocaine proceeds.

The government does not argue the error was harmless. That makes sense. An error that impacts the Guidelines range is usually prejudicial even when the defense did not identify the error at trial. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345, 1347 (2016). When, as here, defense urges correction in the trial court, the government must prove "(1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010); *see United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). The record does not establish either of those things. Although the district court sentenced Sandoval Martinez well below the Guidelines range calculated by Probation, it did not indicate that it would have imposed the same sentence

even if it erred in treating all the seized cash as drug proceeds. Thus, despite the court's sentencing Sandoval Martinez substantially below the prevariance Guidelines, the record does not convince us that the error was harmless.

\* \* \*

We VACATE Sandoval Martinez's sentence and REMAND for resentencing.