# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 16, 2020

Lyle W. Cayce
Clerk

No. 19-11091

United States of America,

*Plaintiff—Appellee*,

*versus*

Gabriel Deshawn Barry,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
No. 7:19-CR-7-3

Before Smith, Clement, and Oldham, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Gabriel Barry pleaded guilty of conspiracy to possess with intent to distribute methamphetamine ("meth"), admitting to selling 122 grams. His sentence, however, was based on the sale of 1,023.5 grams as a result of the conversion of $14,658 to 852.2 grams in calculating the drug quantity. Barry appeals on the grounds that there was insufficient evidence to conclude the money constituted proceeds from drug sales and that, even if there were, there was insufficient evidence to conclude such sales were relevant conduct. Finding no clear error, we affirm.

No. 19-11091

I.

Federal agents received information from the Wichita Falls Police Department ("WFPD") that Barry was involved in a drug-trafficking operation with Darryl Ray and others. Shortly thereafter, the police executed a controlled buy from one of Barry's alleged co-conspirators. Following that, the WFPD searched Barry's home and seized meth, other drugs, and $14,658 in cash. They arrested Barry and charged him with state counts of manufacture/delivery of a controlled substance.

After being released on bond, Barry and Ray engaged in three meth transactions, all of which were controlled buys by government agents. Following those buys, the government charged Barry with conspiracy to possess with intent to distribute meth, giving rise to the present case.

Barry pleaded guilty to that charge. In the factual basis of the plea, he admitted to supplying "at least approximately 122 grams of actual methamphetamine" as part of that conspiracy. But the presentence report ("PSR") said that Barry was responsible for selling 1,023.5 grams, much more than the 122 grams to which he admitted. The difference was driven by the PSR's converting the $14,658 to 852.2 grams of meth.[1] Based on that higher quantity, after accounting for acceptance of responsibility, Barry's offense level was 31, corresponding to a guidelines range of 151 to 188 months given Barry's criminal history. Without including the quantity converted from the seized cash, the range would have been 100 to 125 months.

Barry objected to the PSR's inclusion of the cash in its drug-quantity finding. But the district court overruled his objection and adopted the PSR

---

[1] The PSR might contain a mathematical error, but because the base offense level is the same for anywhere between 500–1500 grams of the relevant type of meth, any such error is harmless. *See* U.S.S.G. § 2D1.1(c)(3).

and its addendum. The court then sentenced Barry to 160 months, specifying that, regardless of the guideline range, the sentence was appropriate under the sentencing factors of 18 U.S.C. § 3553(a). Barry appeals his sentence on two grounds related to inclusion of the converted cash in the drug-quantity calculation.

## II.

We review a district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Factual findings are "clearly erroneous only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014) (cleaned up). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Cisneros-Gutierrez*, 517 F.3d at 764 (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam).

## III.

Barry challenges the conversion of the $14,658 to 852.2 grams on two bases. First, Barry posits that before it could approximate the quantity of drugs based on the seized money, the court needed to find that the amount of drugs seized did not reflect the scale of the offense. Second, Barry asserts that there was insufficient evidence connecting the money to drug sales.

## A.

Barry contends the district court erred in approximating the drug quantity at all without first finding the quantity seized did not reflect the scale of the offense. But the court did make such a finding, albeit implicitly.

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the con-

trolled substance." U.S.S.G. § 2D1.1 cmt. n.5. Because that is the only authority for converting money into a drug quantity, judges, for the purpose of calculating the base offense level, must find that one of the two situations contemplated by § 2D1.1 Note 5 is present before doing so. *See United States v. Henderson*, 254 F.3d 543, 544 (5th Cir. 2001) (Garza, J., specially concurring). But there is no requirement that such a finding be explicit. Adopting the PSR and overruling an objection to it can constitute a sufficient finding where the facts in the PSR support such a finding.[2]

By recommending Barry be held accountable for the $14,658 in addition to the drugs seized in the controlled buys, the PSR and its addendum found the amount seized did not reflect the scale of the offense. Barry objected to that, and the district court overruled his objection and adopted the PSR and its addendum. In doing so, it implicitly found that the amount seized did not reflect the scale of the offense.

## B.

"The district court's calculation of the quantity of drugs involved in an offense is a factual determination." *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). Therefore, we review for clear error Barry's argument that the evidence was insufficient to connect the $14,658 to drug sales.[3]

At sentencing, district courts may consider estimates of the quantity of drugs involved in the offense. *Id.* at 832. So long as a court is convinced,

---

[2] *See United States v. Guzman-Reyes*, 853 F.3d 260, 266 (5th Cir. 2017) (holding that adopting a PSR makes implicit findings); *see also United States v. Marin-Payan*, 672 F. App'x 435, 436–37 (5th Cir. 2016) (per curiam); *United States v. Resendez*, 45 F. App'x 323 (5th Cir. 2002) (per curiam).

[3] The government asserts that Barry failed to preserve this issue, so our review should be for plain error only. Because we conclude the district court did not commit clear error, we need not resolve this.

by a preponderance of the relevant and sufficiently reliable evidence, that money came from relevant drug sales, it may convert the money to a drug quantity. *See United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2007). "While a PSR generally bears sufficient indicia of reliability, bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Rico*, 864 F.3d 381, 385 (5th Cir. 2017) (cleaned up).

Barry's argument is essentially that the lack of direct evidence tying the $14,658 to meth sales renders the PSR's statement that the money constituted drug proceeds such a "bald, conclusionary statement." Specifically, Barry avers that nobody told the officers who seized the money it was drug proceeds, the money was not found in close proximity to the seized drugs, and the controlled buys to which he pleaded guilty happened months later. Moreover, Barry asserts that alternative sources of the money—including it belonging to other family members who lived at Barry's residence and its being savings—cannot be ruled out. Therefore, he reasons, there was insufficient evidence supporting the inclusion of the cash in the drug quantity.

Though Barry is correct that there is little direct evidence tying the money to sales of meth, there is ample circumstantial evidence. First, WFPD officers were aware of Barry's alleged involvement in a drug-trafficking conspiracy far before the search, and the controlled buy from his co-conspirator before the search indicates the conspiracy was already active. Second, the seizure of money gave rise to state law charges for manufacture/delivery of a controlled substance, which is probative of the state's belief that the money was connected to drugs.[4] Third, physical proximity notwithstanding, the

---

[4] *See United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977) ("At a sentencing, a Court can consider many matters that might not be admissible at a trial including evidence of crimes for which the defendant has been indicted but not convicted . . . .").

No. 19-11091

WFPD did seize meth at the same time they seized the money. Fourth, though they happened after the money was seized, Barry's three meth sales for a total of $2,100 are probative of how Barry, who was unemployed and previously had only part-time employment, could have accrued such a large sum of cash. Though Barry asserts there are alternative sources for the money, he presented no evidence supporting those possibilities.[5]

Nothing about those facts leaves us "with the definite and firm conviction" that the district court's inference that the $14,658 came from the sale of 852.2 grams of meth was mistaken. *Akins*, 746 F.3d at 609. Therefore, there is no clear error.

IV.

Barry challenges the inclusion of the $14,658 in the drug-quantity calculation on the ground that any drug sales connected to the cash were not relevant conduct. Even assuming the money constituted drug proceeds, he maintains, there was insufficient evidence for the court to conclude the money was relevant to the controlled buys for which he was convicted.

"In determining a defendant's base offense level, a district court may consider other offenses in addition to the acts underlying the offense of conviction, as long as those offenses constitute relevant conduct as defined in the Guidelines." *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1282 (2020) (internal quotation marks omitted). Conduct is relevant if it is "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* (quoting U.S.S.G. § 1B1.3(a)(2)).

---

[5] *See United States v. Trujillo*, 502 F.3d 353 (5th Cir. 2007) (concluding that a district court may adopt facts in the PSR if they "have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable" (quoting *United States v. Cabrera*, 288 F.3d 163, 173–74 (5th Cir. 2002))).

"Particularly in drug cases, this circuit has broadly defined what constitutes 'the same course of conduct' or 'common scheme or plan.'" *Id.* at 763 (quoting *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993)). Moreover, a district court's determination of what constitutes relevant conduct is a factual finding we review for clear error. *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010).

Offenses "qualify as part of the same course of conduct if they are . . . part of a single episode, spree, or ongoing series of offenses." *United States v. Rhine*, 583 F.3d 878, 886 (5th Cir. 2009) (quoting U.S.S.G. § 1B1.3, cmt. n.5(B)(ii)). We look to "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* (same). Furthermore, "[a] weak showing as to any one of these factors will not preclude a finding of relevant conduct; rather, when one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id.* (cleaned up).

Barry's argument again hinges on the lack of direct evidence about where the $14,658 came from. The lack of direct evidence as to when the transactions that produced the money might've occurred, or of what drugs might've been involved in those sales, precludes concluding that it is relevant conduct, he contends.

But, as above, there is ample circumstantial evidence to satisfy the factors we looked to in *Rhine*. First, though there is no direct evidence of what drugs were involved in sales earning the money, the fact that the WFPD seized meth when it took the money is sufficient circumstantial evidence for the district court to conclude the cash resulted from meth sales as well; this is particularly so because Barry admitted to receiving meth since "in or before [the month the money was seized]."

Second, WFPD seized the money only two months before the first

controlled buy. And though there is no direct evidence of when the sales producing the money might've taken place, the WFPD's information coming only a month before the seizure supports the district court's conclusion that the sales were recent. That close of a temporal proximity is a particularly strong indicator of relevance—enough to overcome weakness in another factor. *See United States v. Ocana*, 204 F.3d 585, 590–91 (5th Cir. 2000) ("It is well settled in this circuit that offenses which occur within one year of the offense of conviction may be considered relevant conduct for sentencing."). The temporal proximity also differentiates this case from *United States v. Wall*, 180 F.3d 641, 645 (5th Cir. 1999), which Barry cites, as there the allegedly relevant conduct occurred four years after the conduct leading to conviction. Those facts are enough that we are again not left "with the definite and firm conviction" that the finding that the conduct was relevant was erroneous. *Akins*, 746 F.3d at 609.

AFFIRMED.