# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2021

Lyle W. Cayce
Clerk

No. 20-61083

United States of America,

*Plaintiff—Appellee*,

*versus*

Leondus Garrett,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:19-CR-48-1

Before Owen, *Chief Judge*, Smith and Graves, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Leondus Garrett, an inmate at Oakdale Federal Correctional Institution, filed for compassionate release in 2020 because of the coronavirus pandemic. The district court denied the motion because Garrett had failed to exhaust his administrative remedies. Garrett moved for reconsideration some months later, which the district court again denied for failure to exhaust. Although, in denying reconsideration, the court misunderstood the exhaustion requirements, it nonetheless reached the correct outcome. Accordingly, we affirm.

No. 20-61083

I.

Garrett was convicted in 2019 of possession with intent to distribute methamphetamine. He was sentenced to 136 months in prison, followed by three years of supervised release. Less than a year later, he filed for compassionate release due to the pandemic. Garrett, a 32-year-old African-American male, sought early release because he was uniquely susceptible to adverse effects from the virus on account of his underlying health conditions (diabetes, high blood pressure, and obesity) and ethnicity.

Garrett initially sought compassionate release through the Bureau of Prisons ("BOP"). According to him, "he wrote a letter requesting compassionate release to the staff at Oakdale FCI on April 13, 2020." He claims that he also "made requests for compassionate release with [the] BOP on April 12, 2020, May 26, 2020, and June 10, 2020." He concedes, however, that he did not "submit an official BP-9," the appropriate form on which a formal request for compassionate release must initially be filed. 28 C.F.R. § 542.14(a).

Garrett's failure to follow the appropriate procedures notwithstanding, the BOP acknowledged receipt of a June 12 request for compassionate release, which it denied officially on July 10. And Garrett does not suggest that the BOP ever received any of his earlier letters.

On May 26—more than a month after he allegedly sent his first informal request, but more than two weeks *before* the BOP ever acknowledged receipt of any request—Garrett filed a motion for compassionate release in the district court per 18 U.S.C. § 3582(c)(1)(A)(i). But, because Garrett had not "filed an official request through a BP-9 form" before filing his motion in the district court, the court concluded that he had not exhausted his administrative remedies. Consequently, it denied his motion without prejudice on July 28.

Rather than filing a new motion in the district court, Garrett moved for reconsideration on October 16. The court denied reconsideration because—citing reasons different from those in its initial denial—it determined that Garrett still had failed to exhaust. Garrett appeals that denial.

## II.

The judiciary can "modify a term of imprisonment" if,

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . if it finds that [certain conditions are met].

18 U.S.C. § 3582(c)(1)(A). Thus, to file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues. That general premise is not controversial—at issue here is not *whether* exhaustion is required, but only *how to satisfy* the exhaustion requirement.

Section 3582(c)(1)(A)'s text states plainly that a prisoner has the option to file his motion in the district court upon the expiration of one of two events: (1) once he "has fully exhausted all administrative rights to appeal . . . *or*" (2) after "the lapse of 30 days from the receipt of such a request by the warden." *Id.* (emphasis added). And it's just as plain that "whichever" of those events occurs "earlier" triggers the right to file in the district court. *Id.*

So, an inmate has two routes by which he may exhaust his administrative remedies. Both begin with "requesting that the [BOP] bring a motion on the defendant's behalf." *United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) (quotation omitted), *cert. denied*, 141 S. Ct. 920 (2020). Following that initial step, the prisoner has a choice. First, he may wait for a response from

No. 20-61083

the BOP and seek further administrative review of that response (assuming it is adverse). On that path, only once he has "exhausted all administrative rights to appeal" may he bring his motion in the district court. § 3582(c)(1)(A). Second, a prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court. *Id.*

## III.

As stated above, regardless of what must occur for a prisoner to complete his exhaustion requirements, the process must begin by "requesting that the [BOP] bring a motion on the defendant's behalf." *Franco*, 973 F.3d at 467 (quotation omitted). To make that request, an inmate must file it in accordance with 28 C.F.R. § 542.14. And that regulation requires that he file the request "on the appropriate form"—the BP-9. § 542.14(a). Only after the "lapse of 30 days *from the receipt of such a request*" may the prisoner bring a motion in the district court. § 3582(c)(1)(A) (emphasis added).[1]

If the BOP ever received a proper request,[2] it occurred on June 12. That is more than two weeks *after* Garrett filed his motion in the district court seeking compassionate release. So, Garrett filed his motion in the district court *before* properly "requesting that the [BOP] bring a motion on [his] behalf." *Franco*, 973 F.3d at 467 (quotation omitted). In its July 28 order,

---

[1] Or, taking the other path described above, if the prisoner "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf"—and has somehow done that within 30 days of the BOP's receipt of the initial request—he conceivably could bring a motion in the district court in less than 30 days' time. § 3582(c)(1)(A).

[2] It isn't clear from the record whether Garrett ever filed on the appropriate form. But, because the BOP recognized receipt of a request, and because that question is not dispositive, we assume for argument's sake that the June 12 request was submitted properly.

No. 20-61083

then, the district court was correct that, when his motion was filed on May 26, Garrett had failed to satisfy the exhaustion requirement. *See* § 3582(c)(1)(A).

IV.

On October 16, Garrett filed his motion for reconsideration. In its order denying that motion, the district court articulated a different line of reasoning as to why Garrett had failed to exhaust his administrative remedies. It held that, so long as the BOP responds to the request within 30 days, an inmate is "required to pursue the administrative appeals process with the BOP to its conclusion before filing a motion for compassionate release" in the district court. Therefore, because the BOP denied Garrett's request on July 10—less than 30 days after it received the request—he could not file his motion in the district court until he pursued his administrative appeals to their conclusion.

For all of the reasons provided above, *supra* Part II, that understanding is at war with the statute's text.[3] Section 3582(c)(1)(A) grants to the inmate the choice to take either of the two paths it provides. Once 30 days has "lapse[d] . . . from the receipt of such a request by the warden," the prisoner may file his motion in the district court. § 3582(c)(1)(A). That is so irrespective of whether the BOP has responded to the request or whether the inmate has administrative appeals available to him.

It's not surprising, then, that other courts have agreed that "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). It is of no conse-

---

[3] Tellingly, the government elects not to defend the district court's reasoning directly.

No. 20-61083

quence when the BOP responds to an inmate's request—once "30 days from the *receipt* of such a request by the warden" has passed, the defendant may file in the district court. § 3582(c)(1)(A) (emphasis added). Therefore, Garrett was not required to pursue his administrative-appeals process to its conclusion merely because the BOP responded to his motion within 30 days. The district court was incorrect to conclude otherwise.

## V.

That interpretive question, however, does not resolve the present dispute. As stated above, the district court's *initial* denial was correct—at that point, Garrett had failed to exhaust because the requisite 30-day period had not yet lapsed. Only after that initial denial did he satisfy the exhaustion requirement. And instead of filing a new motion upon exhaustion, he filed a motion for reconsideration.

The more nuanced question, then, is whether Garrett could cure his exhaustion defect after the court's initial denial and then rely on that cured defect as a justification for reconsideration. He could not. An intervening change in circumstance—such as exhausting previously unexhausted administrative remedies—is not a proper basis for a motion for reconsideration.[4]

Courts typically construe a motion to reconsider a denial of compassionate release as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e).[5] But, because Garrett filed his motion more than

---

[4] *Cf. Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam) ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding.").

[5] *See, e.g.*, *United States v. Batiste*, No. 06-145, 2021 WL 2338217, at *1–2 (E.D. La. June 8, 2021) (stating that "[c]ourts apply the standards set forth in the Federal Rules of Civil Procedure to motions for reconsideration in the criminal context" and construing a motion for reconsideration of a denial of compassionate release "as [a] motion to alter or

28 days after the denial, we treat it "as if it were a Rule 60(b) motion," as long as "the grounds asserted in support of the Rule 59(e) motion would also support Rule 60(b) relief." *Frew v. Young*, 992 F.3d 391, 396 (5th Cir. 2021) (quotation omitted).

Regardless of how it is construed, the motion for reconsideration properly was denied.[6] The primary basis on which Garrett justified reconsideration was a purported "manifest error of law." But, as stated above, there was no legal error in the July 28 underlying judgment. Because he filed his motion in the district court *before* the warden received his request, he failed to exhaust his administrative remedies.

To be sure, after Garrett's first motion was denied without prejudice, he successfully exhausted. But "[i]t is irrelevant" that he achieved exhaustion in the intervening period between the denial and his motion for reconsideration—he was required "to properly exhaust . . . *before* filing" the

---

amend under Rule 59(e)"); *United States v. Munoz*, No. 2:17-CR-00330-01, 2020 WL 4226544, at *1 (W.D. La. July, 23, 2020) (construing a motion to reconsider a compassionate release denial as a Rule 59(e) motion); *United States v. Silva*, No. 2:06-CR-20089-11, 2020 WL 3440103, at *1 (W.D. La. June 22, 2020) (same).

[6] "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017) (cleaned up). Rule 60(b) includes at least six grounds on which relief from a final judgment may be granted. FED. R. CIV. P. 60(b). Not enumerated, but acknowledged by the Fifth Circuit as a basis for Rule 60(b) relief, is "to rectify an obvious error of law." *Caldwell v. Parker Univ.*, 802 F. App'x 841, 842 (5th Cir. 2020) (per curiam) (cleaned up). Because Garrett's motion asserted that reconsideration was warranted to correct a "manifest error of law" and to "avoid manifest injustice," we assume *arguendo* that those are proper grounds to seek reconsideration under either Rule 60(b) or Rule 59(e).

motion.[7]  The court did not have discretion to excuse his failure to do so.[8]

The irony is that, because the initial denial was without prejudice, Garrett could have filed a new motion upon exhaustion.  And he could have done so substantially sooner than he filed his motion for reconsideration—only 30 days after the BOP received his request on June 12.  But being in a procedural posture to file a new motion is not the same as meriting a favorable result in a motion to reconsider.

Although it grounded its determination in an erroneous interpretation of § 3582(c)(1)(A), the district court reached the correct outcome.  A motion to reconsider is not the proper avenue to cure an exhaustion defect.  We may affirm the district court's judgment on any ground supported by the record.  *See, e.g.*, *Clarkston v. White*, 943 F.3d 988, 992 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2763 (2020).

AFFIRMED.

---

[7] *Gonzalez*, 702 F.3d at 788 (emphasis added); *see also Franco*, 973 F.3d at 467 ("Both routes begin with the defendant requesting that the [BOP] bring a motion on the defendant's behalf." (quotation omitted)).

[8] Section 3582(c)(1)(A) is a non-jurisdictional claims-processing rule and, therefore, may be waived.  *See, e.g.*, *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir.) (Higginson, J., concurring), *motion to vacate stay denied*, 140 S. Ct. 1598 (2020); *Franco*, 973 F.3d at 468.  But, although it's not jurisdictional, it is a "mandatory" rule.  *Franco*, 973 F.3d at 468.  Thus, when "properly invoked, [it] must be enforced."  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017).  The government raised the issue of exhaustion below; therefore, the district court did not have discretion to excuse non-exhaustion.

No. 20-61083

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting:

I agree with the majority that the district court erred in its application of the exhaustion requirements in denying Leondus Garrett's motion for compassionate release. However, I disagree with the majority that the district court nonetheless reached the correct outcome. Because I would vacate and remand, I respectfully dissent.

On May 26, 2020, Garrett filed a pro se motion requesting a reduction of his term of imprisonment for purposes of compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Garrett asserted that he faced a severe risk of harm from COVID-19 due to underlying health conditions and asked to be released to home confinement. Garrett also asserted that he had exhausted his administrative remedies by writing a letter to prison officials on April 13, 2020, to which he never received a response. Pursuant to a general order of the district court, the Federal Public Defender was appointed to represent Garrett.

On June 29, 2020, Garrett's appointed counsel filed a more detailed Reply Supporting Motion for Compassionate Release with Garrett's June 23, 2020 letter to the district court included as an attachment. Garrett renewed the merits of his motion and asserted that he had exhausted his administrative remedies by sending letters seeking compassionate release in April, May and June of 2020. The reply also stated that Garrett tested positive for COVID-19 in May 2020.

On July 28, 2020, the district court ordered that the motion for compassionate release be denied without prejudice due to Garrett's failure to exhaust his administrative remedies prior to the filing. *See United States v. Garrett*, 1:19-CR-48-HSO-JCG, 2020 WL 4340982 (S.D. Miss. July 7, 2020). The district court found that Garrett had failed to comply with the Bureau of Prisons (BOP) procedures for exhausting his administrative remedies by

9

No. 20-61083

submitting a request for compassionate release on a BP-9 form or administratively appealing any unfavorable response. *See* 28 C.F.R. § 542.14.

On October 16, 2020, Garrett moved for reconsideration, asserting that the denial of his motion for compassionate release was error because he had exhausted his administrative remedies by sending letters. Garrett also presented new evidence that his June 10, 2020, administrative submission was accepted by the BOP on June 12, 2020, but denied on July 10, 2020.[1] Garrett also asserted that the statute only required him to wait 30 days following the submission of his administrative request in order to exhaust his remedies.

The district court denied Garrett's motion without prejudice on November 10, 2020, finding that reconsideration was unwarranted because Garrett had not sufficiently exhausted his administrative remedies prior to filing his motion for reconsideration despite the plain language of Section 3582(c)(1)(A). The district court also found that, as Garrett's June 12, 2020, request was denied by the warden on July 10, Garrett had failed to show that he then waited thirty days before filing his motion. Garrett subsequently filed this appeal. Garrett asserts that the district court erred by denying Garrett's motion for compassionate release based on a legally incorrect ruling that he did not exhaust all administrative remedies with the BOP.

Following the First Step Act of 2018, a defendant may move for a compassionate release reduction in sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

---

[1] The majority states that Garrett does not suggest that the BOP ever received any of his earlier letters. However, Garrett clearly asserts that he sent the letters which suggests that the BOP received them despite only denying the most recent of the duplicative requests. Regardless, there's no dispute that the BOP received the June letter.

receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); see First Step Act of 2018, Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239. The pre-filing administrative exhaustion requirement is not jurisdictional, but it is instead a mandatory claim-processing rule. *See United States v. Franco*, 973 F.3d 465, 467-68 (5th Cir. 2020). In *Franco*, this court concluded that, because the government properly raised the rule requiring exhaustion in the district court, "this court must enforce the rule." *Franco*, 973 F.3d at 468 (internal quotation marks, emphasis, and citation omitted).

Here, the government raised the issue of exhaustion and provided evidence that no administrative request for compassionate release had been filed by Garrett as of June 2, 2020. While Garrett asserts that he sent letters in April, May and June of 2020, he also acknowledges that the BOP accepted his administrative request for compassionate release on June 12, 2020 and denied his request on July 10, 2020. Further, Garrett filed his motion for reconsideration on October 16 which was well more than 30 days after he filed his June 12 administrative request. The question then is whether, at the very least, the applicable time frame surrounding the June 12, 2020 request is sufficient to comply with Section 3582.

This court has previously acknowledged, without addressing, a potential circuit split on the question of whether a defendant may file a motion for compassionate release in federal court thirty days after submitting his administrative request, regardless of whether the BOP responds during that period. *See United States v. Ward*, No. 20-60665, 2020 WL 7755453, 2 & n.1 (5th Cir. Dec. 29, 2020); *see also United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (reversed district court that held defendant was required to fully exhaust his administrative remedies because the BOP responded to request for compassionate release within thirty-day period); and *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (Courts permitted to grant

compassionate release on prisoner's request, provided prisoner first made request to the BOP and thirty days had passed. But exhaustion is not jurisdictional, thus courts need not consider it where the parties do not raise it.).

The plain language of 18 U.S.C. § 3582(c)(1)(A), as set out above, requires only "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The provision also states that courts should go with "whichever is earlier." *Id.*

Here, thirty days had lapsed and, thus, the BOP had an opportunity to respond to the compassionate release request. Again, this is a non-jurisdictional claim-processing rule. Further, this court has previously concluded that the exhaustion requirement is not absolute and can be waived. *See Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020).[2] Moreover, as Garrett is seeking compassionate release during a pandemic, it would serve no purpose to require him to refile and start over for simply a claim-processing rule. There is no requirement that Garrett administratively appeal the BOP's denial of his request before a court may consider his motion.

For these reasons, I would vacate the district court's order and remand for a determination on the merits of Garrett's motion for compassionate release. Thus, I respectfully dissent.

---

[2] The majority relies on *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012), for the proposition that "it is irrelevant whether exhaustion is achieved during the federal proceeding." *Id.* at 788. However, "Gonzalez admitted that he did not exhaust until after his section 1983 lawsuit was well underway." *Id.* Garrett makes no such admission; instead he asserts that he also sent earlier requests.