# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2022

Lyle W. Cayce
Clerk

No. 21-50060

United States of America,

*Plaintiff—Appellee*,

*versus*

Adam Minjarez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:20-CR-137-1

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:*

Adam Minjarez, who pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), appeals his sentence. Because we find that the district court did not clearly err in deciding Minjarez's sentence, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50060

**I.**

In April 2020, Adam Minjarez was the passenger in a vehicle that was pulled over after nearly striking a police officer conducting an unrelated traffic stop. After Minjarez eventually complied with officers' commands and exited the vehicle, the officers smelled the odor of marijuana and observed two bags of the same. Law enforcement officers also recognized Minjarez, who "was known by law enforcement to distribute various narcotics and broadcast the narcotics on social media." The officers then conducted a search of the vehicle and found: (1) 4.635 pounds of marijuana; (2) 36 grams of cocaine; (3) a spoon with residue; (4) a box of sandwich baggies; (5) a scale; (6) one 1,050 mg cartridge of "premium cannabis oil"; (7) a baggie containing seven rounds of .40 caliber ammunition; and (8) two cell phones. The officers also observed that the vehicle, which had recently traveled to the United States from Mexico according to border-crossing records, had modifications consistent with smuggling contraband.

Minjarez's partner (who was driving the vehicle) spoke to the officers and gave consent for them to search a trailer she shared with Minjarez. In the trailer, officers found: (1) one pound of marijuana; (2) five grams of cocaine; (3) baggies consistent with narcotics distribution; and (4) multiple pistols. Officers also acquired a warrant to search a storage building controlled by Minjarez and found 21 pounds of marijuana and $47,436 in cash.

Minjarez then pleaded guilty to a charge of violating 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) by knowingly possessing cocaine with intent to distribute. In the Presentence Investigation Report (PSR), the probation officer determined that Minjarez was accountable for .541 kilograms of cocaine—the 41 grams of cocaine recovered from the vehicle and trailer, and an additional one-half kilogram of cocaine established by mathematically

2

No. 21-50060

converting half of the cash seized from the storage building into an amount of cocaine.[1]

Based on the amount of cocaine attributed to Minjarez, the probation officer determined that Minjarez's base offense level under U.S.S.G. § 2D1.1(a)(5) was 24; the probation officer did not consider either the marijuana seized or the half of the money that was not converted into cocaine in determining the base offense level. After two levels were added for possession of a dangerous weapon and three levels were subtracted for acceptance of responsibility, the PSR's total offense level calculation was 23. With this recommendation and a criminal history category of V, the guidelines range was a sentence of 84 to 105 months' imprisonment.

Minjarez objected to the determination in the PSR that he was accountable for .541 kilograms of cocaine, arguing that "the cash represent[ed] marijuana sales proceeds and not cocaine," that there was an insufficient factual basis to determine otherwise, and that the probation officer did not reach her approximation based on any of the example factors outlined in Note 5 to U.S.S.G. § 2D1.1. Minjarez also argued that his criminal history demonstrated that his drug of choice was marijuana, since 11 of his 14 arrests or convictions were related to marijuana. Therefore, according to Minjarez, his base offense level should have been 16 based on possession of 29.35 kilograms of Converted Drug Weight—26.635 pounds of marijuana converted to 12.08 kilograms of converted drug weight, 41 grams of cocaine converted to 8.2 kilograms of converted drug weight, and $47,436 converted

---

[1] The cash-to-cocaine conversion was based on the case agent's assessment that the amount of money seized could buy "a little over a kilogram of cocaine" or "[a]pproximately 20 pounds of marijuana."

to the 20 pounds, or 9.072 kilograms, of marijuana that could be purchased with that sum of money.

The probation officer rejected the objection, stating that it was "plausible in light of the record as a whole, [that] the monies located ($47,436) were proceeds from the sale of marijuana and cocaine" and that "[a] conservative estimate accounted for half the monies being proceeds from the sale of marijuana and the other half was accounted from the sale of cocaine." The district court also overruled Minjarez's renewed objection at sentencing "based upon and relying upon the response of the probation officer and the Court's reliance upon the factual basis stated in" the PSR; the court also stated that it "believe[d] that this [was] really a conservative estimate." After granting a motion for a downward departure (which brought Minjarez's criminal history category from V to III and thus adjusted the guidelines range to 57 to 71 months' imprisonment), the district court sentenced Minjarez to 71 months' imprisonment and three years of supervised release. Minjarez timely appeals.

## II.

"The district court's calculation of the quantity of drugs involved in an offense is a factual determination" that is "entitled to considerable deference and will be reversed only if . . . clearly erroneous." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *Id.* (quoting *Alford*, 142 F.3d at 831).

The factual findings of a district court can be based on "any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). "Generally, a PSR

'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge'" and can be relied upon by the district court "without further inquiry" as long as the facts in the PSR themselves "have an adequate evidentiary basis with sufficient indicia of reliability." *Id.* (first quoting *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010), then quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)). When faced with facts in a PSR that are based on sufficiently reliable evidence, a defendant is required to introduce rebuttal evidence contradicting the PSR's statements or otherwise demonstrating why those statements are unreliable; "[m]ere objections to such supported facts are generally insufficient." *Id.*

### III.

We hold that there was reliable evidence to support the PSR's cash conversion and that the district court did not clearly err in relying on it. There was ample evidence demonstrating Minjarez's involvement in cocaine distribution, not just marijuana distribution; that evidence in turn supported the inference that at least some of the seized cash came from the sale of cocaine. Minjarez possessed distributable amounts of cocaine in addition to distributable amounts of marijuana. Minjarez not only had large gallon size bags of marijuana but also small sandwich baggies conducive to cocaine sales. And Minjarez specifically claimed that he did not use cocaine, supporting an inference that the cocaine he possessed was for distribution and not personal consumption.

All these facts serve to support what is likely the most compelling evidence linking Minjarez to cocaine distribution—the cocaine charge to which he pleaded guilty. Minjarez pleaded guilty only to a cocaine offense, namely possession *with an intent to distribute*. In light of that fact, and combined with the other evidence linking Minjarez to cocaine distribution, it

No. 21-50060

was plausible to tie half the money found in Minjarez's possession (and near other distributable amounts of drugs) to cocaine distribution.

Minjarez's arguments to the contrary are unpersuasive. He points to the fact that law enforcement officers found and seized vastly higher amounts of marijuana than cocaine. While that may be true, it does not change the fact that law enforcement officers also found distributable amounts of cocaine in Minjarez's possession. It was that cocaine, coupled with the cocaine offense to which Minjarez pleaded guilty, that supported the probation officer's decision to convert half the cash that was seized into cocaine. The fact that Minjarez *also* was found with marijuana does not render the calculation an error, especially considering that the seized marijuana played no part in Minjarez's base offense calculation. Instead, it was the presence of cocaine that formed the evidentiary basis for the cash conversion, full stop. The additional presence of marijuana, even in larger quantities, does not cancel out the seizure of cocaine.

Minjarez's citations to *United States v. Barry*, 978 F.3d 214 (5th Cir. 2020), and *United States v. Martinez*, 12 F.4th 473 (5th Cir. 2021), are also unavailing. In *Barry*, we affirmed a conversion of cash into drugs when law enforcement "seized meth when it took the money" because that fact was "sufficient circumstantial evidence for the district court to conclude the cash resulted from meth sales as well." 978 F.3d at 219. Minjarez attempts to flip this positive holding into a negative—that, because we have held that simultaneous seizure of cash with drugs allows an inference that the cash constituted drug proceeds, the lack of a simultaneous seizure of cash and a specific type of drug (here, cocaine) prevents the conversion of cash into that specific type of drug.

That argument does not hold. Simply put, Barry and Minjarez raised two separate arguments. Minjarez asks us to convert cash into one type of

6

drug (marijuana) and not another (cocaine), conceding that it is plausible the cash could be drug proceeds; Barry asked us to refrain from converting the cash into drugs altogether, *id.* at 218. In *Barry*, we declined, noting that the simultaneous seizure was sufficient circumstantial evidence to find that the cash came from drug transactions writ large. The same inference holds here—the fact that the cash was found next to pounds of marijuana supports viewing the cash as drug proceeds, which the district court did and Minjarez does not contest. That inference says nothing about the *specific type of drug transaction* that the district court can infer the money came from; *Barry* offers no guidance on that question, either in favor of the conversion or, importantly, against it. Put another way, Minjarez is indeed correct that "[t]he fact that officers seized the money when they also seized the marijuana provides sufficient circumstantial evidence that the cash was connected to the marijuana." But that truth says nothing about whether the cash can *also* be connected with cocaine and cocaine distribution, which formed the basis of Minjarez's guilty plea. At bottom, this case is not about marijuana—it is about cocaine. And the litany of evidence linking Minjarez to cocaine distribution is sufficient to tie the money that Minjarez all but concedes were drug proceeds (or at least could be viewed as such) to cocaine transactions, irrespective of where that money was actually seized.

Similarly, our recent decision in *Martinez* does not aid Minjarez. There, we held it was clear error to treat "100% of the money [seized] as cocaine proceeds" because that money could have either been legal earnings (because it was found in the defendant's tobacco shop) or proceeds from the sale of other drugs. 12 F.4th at 475–76. The holding from that case—that it is error to treat seized cash *entirely* as proceeds from a single drug when there are other plausible explanations—has no bearing on this case. The district court here plainly did something different, treating the cash as *partially* derived from cocaine sales. *Martinez* does not render that decision clearly

erroneous. Had the district court treated the entirety of the cash as cocaine proceeds, instead of splitting it half-and-half between cocaine and marijuana, clear error may have occurred under *Martinez*. But the district court did not. Instead, it reasonably attributed a portion of the seized cash to the drug that formed the basis of Minjarez's charge and guilty plea. That was not clear error.

Nor did the district court commit clear error in the half-and-half ratio it chose for the cash conversion. Importantly, because the PSR's conversion of half of the cash into cocaine was based on evidence with a sufficient indicia of reliability (as discussed above), the burden shifts to Minjarez to "offer rebuttal evidence demonstrating that [the facts in the PSR] are 'materially untrue, inaccurate or unreliable.'"[2] *Harris*, 702 F.3d at 230 (quoting *United States v. Huerta*, 182 F.3d 361, 364–65 (5th Cir. 1999)). Minjarez has not done so. Instead, he only objects to the chosen ratio without putting forward rebuttal evidence showing it was incorrect. Those objections fail to show clear error. Estimating the quantity of drugs for sentencing purposes is an inherently imprecise endeavor. We cannot find clear error in the district court's best efforts to find a conservative estimate. *See Betancourt*, 422 F.3d at 246–48 (noting the deference given to district courts in extrapolating the quantity of drugs attributed to a defendant and upholding a specific, conservative estimate even in light of other possible alternate calculations); *see also* U.S.S.G. § 2D1.1 cmt. n. 5 ("Where . . . the amount [of a drug] seized does not reflect the scale of the offense, the court *shall approximate the quantity of the controlled substance*. In making this determination, the court

---

[2] It is only in cases where "the factual recitation *lacks* sufficient indicia of reliability" that it is "error for the district court to consider [those facts] at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." *Harris*, 702 F.3d at 231 (emphasis added). Here, because we find that the facts do have sufficient indicia of reliability, tangible rebuttal evidence is required and mere objections do not suffice.

No. 21-50060

may consider, for example, the price generally obtained for the controlled substance[.]" (emphasis added)).

## IV.

For the foregoing reasons, we AFFIRM.