# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2022

Lyle W. Cayce
Clerk

No. 22-30359

United States of America,

*Plaintiff—Appellee*,

*versus*

Terrence Rollins,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:19-CR-162-1

Before Smith, Barksdale, and Haynes, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Terrence Rollins appeals the denial of his motion for compassionate release under the First Step Act. Rollins maintains that the district court abused its discretion in denying a sentence reduction. We find no error and affirm.

I.

Rollins is a paraplegic 43-year-old whose right leg was also amputated after complications from the 2013 gunshot wound that left him paralyzed. At the time of his arrest in August 2018, police found Rollins septic and mal-

No. 22-30359

nourished, lying in his bodily wastes, though with five firearms around him in reach. But for his arrest, Rollins likely would have died of his severe wounds and infections. For the first six months of his detention, Rollins was hospitalized at University Medical Center ("UMC") because of his poor condition. There, physicians recommended that Rollins have his remaining leg amputated and that he further undergo a hemicorporectomy, which would "essentially cut him in half to remove the infected part of his body."[1] Rollins refused, stating that he was concerned about the complex nature of the procedure and the adequacy of medical care he would receive.

In September 2019, Rollins moved for pretrial release, alleging that his brother could care for him at home. The government opposed the release, noting that Rollins's doctor at Plaquemines Parish Detention Center ("Plaquemines") reported that Rollins had a history of not complying with medical treatment and was "extraordinarily resistant to effective medical care." The doctor further explained that Rollins required daily medical care because his feces and urine were consistently reinfecting his stage 4 ulcers on his sacrum and buttocks, and it was "almost impossible to imagine the ability to have them ever heal."

Regardless of the potential surgery, the doctor noted that Rollins would require 24-hour attention and that Plaquemines could not handle a patient with such severe medical needs. Nonetheless, the magistrate judge,

---

[1] A hemicorporectomy "is a radical surgery that involves amputation of the pelvis and lower extremities by disarticulation through the lumbar spine with concomitant transaction of the aorta, inferior vena cava, and spinal cord. It is also accompanied by the corresponding urinary and intestinal diversion." Gerardo Gallucci, *How Is the Long-Term Quality of Life Following Hemicorporectomy? A Case Report of a Patient with 16 Years of Follow-Up*, 3 WORLD J. SURG. SURGICAL RES., Dec. 2020, at 1. The mortality rate is 50%, though that has decreased in recent years, and there have been only 66 cases described in the literature. *Id.*

No. 22-30359

after a hearing, denied Rollins's motion for pretrial release.

In January 2020, Rollins pleaded guilty of possession with intent to distribute heroin, crack cocaine, and powder cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and of possession of seven firearms in furtherance of those drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i). In April 2020, Rollins moved for temporary release under the Bail Reform Act. He urged that the COVID-19 pandemic, a recent contraction of sepsis, and his poor health condition supported pre-sentencing release. The district court denied that relief, finding that Rollins did not fall under the narrow exceptions of the Act. Rollins did not establish exceptional reasons to support release, nor did he prove with clear and convincing evidence that he was not a flight risk or a danger to the community.

Before sentencing in December 2021, Rollins was hospitalized multiple times for infections and complications with his treatment at Plaquemines. In August 2021, Rollins was diagnosed with septic arthritis, tachycardia, and other complications and infections from his previous injuries. In November 2021, another physician at UMC wrote, "given [Rollins's] extensive medical problems, I feel that medical release from prison would be in the best interest of his health."

Rollins's presentence investigation report noted that before the present case, Rollins's only criminal history was a felony conviction of possessing a firearm on school property when he was 17, and his probation on that charge was revoked. The report indicated that although Rollins's guideline range was 24 to 30 months' imprisonment, the possession-in-furtherance-of-drug-trafficking charge carried a mandatory five-year statutory minimum sentence. The government noted that Rollins did not provide substantial assistance and that it would not file a motion for a sentence reduction under U.S.S.G. § 5K1.1. That would have allowed the court to vary from the man-

datory minimum, but otherwise, the government did not oppose Rollins's request for a downward variance.

The district court sentenced Rollins to 12 months on the § 841 charges, varying downward, and the minimum of 60 months on the § 924 charge, for a total of 72 months. The court stated the sentence was "based on the defendant's health concerns and the history and characteristics of this defendant" and to "promote respect for the law and provide[] just punishment." Rollins did not appeal, and his release date is September 10, 2023.

In January 2022, Rollins moved for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Rollins contended that he needed extensive surgery to remove his remaining leg and may still need a hemicorporectomy if his condition continues to deteriorate. Rollins averred that his medical treatment and custody had already cost the U.S. Marshals over $1 million, that Plaquemines was incapable of providing complete medical care, and that Rollins could not receive surgery at UMC while in custody of the Marshals. Instead, the Bureau of Prisons ("BOP") would have to designate him for treatment and transport him to a medical facility. Rollins posits that these were "extraordinary and compelling" medical conditions warranting release.

Rollins also maintained that he would not be a danger to the public, a requirement under 18 U.S.C. § 3142(g). Rollins urged that he legally purchased the firearms he was found at arrest with and would not have access to firearms as a convicted felon. Additionally, his severe medical conditions and paraplegia prevented recidivism. Rollins further contended that his incarceration had cured his drug addiction, which motivated his crimes. If released, he would get the surgeries recommended since 2019, the leg amputation and the hemicorporectomy, and ideally, go to a nursing home to recover. Furthermore, Rollins had already served over three years of his sentence and

had spent most of his time incarcerated at Plaquemines, which had stated that it could not care for him.

Rollins filed a supplemental memorandum to his compassionate-release motion in February 2022, noting that he had been re-hospitalized at UMC because of additional septic symptoms. He was further diagnosed with "severe sepsis, abscess, septic joint" and "necrotizing fasciitis." Rollins still had not received a designation for a BOP facility, a necessary condition for his required surgeries.

In March 2022, the district court denied Rollins's motion for compassionate release, though noting Rollins's condition was "dire." First, the court held that "Rollins ha[d] not sufficiently shown he will no longer pose a threat to the public post-release." The court stated that Rollins's offenses of possession of "seven firearms and ammunition inside his home along with heroin, cocaine base, and cocaine hydrochloride" were "very serious." Additionally, "while stricken with severe medical issues and confined to a wheelchair, Mr. Rollins still trafficked heroin." There was "no indication in the record that Mr. Rollins would not revert to criminal behavior if released" because his "medical complications did not prevent criminal activity in the past." "Accordingly, Mr. Rollins' history, the serious nature of his offense, and the danger his release would pose to the community at-large weigh[ed] against granting the present motion."

Secondly, the district court found it could not "allow Mr. Rollins's release at the potential expense of public safety" because of "the nature of Mr. Rollins's crime, his past criminal conduct, and the apparent risk of him reverting to said conduct." The court held that it could not "in good consci[ence], allow Mr. Rollins's release at the potential expense of public safety" and that "[r]eleasing Mr. Rollins after just three months of incarceration would place the public at risk."

The court additionally found the need to "provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner" weighed in favor of maintaining his sentence. The court found that the BOP was "equipped to address [Rollins's] medical needs" and that Rollins's "past behavior indicates an apparent apathy or inability to tend to his medical needs." The court cited Rollins's condition at arrest and his rejection of medical care and surgery while incarcerated as support for the conclusion that Rollins would "most effectively receive the needed care he requires in the custody of the Bureau of Prisons."

Two weeks later, Rollins moved for reconsideration based on new evidence and corrections of fact. First, defense counsel noted Rollins had served 44 months, not three months. Second, the BOP had informed Rollins that there was no bed available at his designated federal medical facility. As a result, he remained at Plaquemines and was receiving medical treatment at UMC, not a BOP medical center. Third, Rollins had recently had surgery to remove part of his hip bone, and one of the doctors sent a letter stating that he needed "more extensive surgery with follow-up care in a long-term facility or to be put on hospice." This letter included that Rollins was "now amenable to having [the hemicorporectomy]" and "[t]his admission is the first time [Rollins] has agreed to [the] surgery."

The district court denied the motion for reconsideration, correcting its error about the time served but explaining that the "primary consideration was, and still is, Mr. Rollins's threat to the public's safety." The court found that Rollins possessed drugs and firearms "[d]espite his severe medical issues" and "modifying Mr. Rollins's sentence would inaccurately reflect the seriousness of his crimes and, in turn, fail to discourage criminal conduct and encourage respect for the law."

Rollins appeals this denial. Currently, the government has designated

Rollins to the Federal Medical Center in Fort Worth, Texas, where a bed has been made available to him.

## II.

Appeals of motions for compassionate release are judged on the abuse-of-discretion standard. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *United States v. Jackson*, 27 F.4th 1088, 1091 (5th Cir. 2022). Because Rollins does not point to any legal errors in the denial of his motion, we inquire whether the district court abused its discretion by basing its decision on a clearly erroneous assessment of the evidence. *See Jackson*, 27 F.4th at 1091. "A factual determination is clearly erroneous only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020)). "Even when the district court has erred, we may affirm if another ground in the record supports its judgment." *Id.* (citing *United States v. Garrett*, 15 F.4th 335, 340 (5th Cir. 2021)).

"[A] prisoner seeking compassionate release must overcome three hurdles." *Id.* at 1089. First, he must prove that "extraordinary and compelling reasons" justify a sentence reduction. *Id.* (citing 18 U.S.C. § 3582(c)-(1)(A)(i)). Second, the reduction "must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (citing § 3582(c)-(1)(A)). "Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* If the § 3553(a) factors weigh against a reduction, the district court has the discretion to deny the motion. *Id.* (quoting *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021)).

Although the district court assessed Rollins's medical situation as "dire," the court never affirmatively stated that it was an extraordinary and compelling reason for compassionate release under § 3582(c)(1)(A)(i).

Nonetheless, "we have regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 1093 n.8 (citing *Ward*, 11 F.4th at 360); *see also Chambliss*, 948 F.3d at 693 ("[T]he court also noted that compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a).").

The § 3553(a) factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant" and "(2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

"Furthermore, in reviewing the application of the § 3553(a) sentencing factors, we look to the [*Gall*] standard." *Chambliss*, 948 F.3d at 693 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). There, the Court indicated that the "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Id.* (quoting *Gall*, 552 U.S. at 51). "Thus, we give deference to the district court's decision and note that reversal is not justified where 'the appellate court might reasonably have concluded that a different sentence was appropriate.'" *Id.* (quoting *Gall*, 552 U.S. at 51).

## III.

The district court sufficiently stated its reasons for denying compassionate release and did not clearly err in assessing the evidence when weighing the § 3553(a) sentencing factors. The court made specific factual findings adequately articulating the primary reason for the denial of relief.

Applying the sentencing factors, the district court considered Rollins's prior criminal history, his serious drug and firearms crimes in the instant case, and the danger his release would pose to the public. Although the court clearly erred the first time in stating that Rollins had served only three months in prison when in fact he had served 44 months, the court corrected this error on reconsideration. And the court made the discretionary decision to give more weight to the potential harm Rollins's release may cause the public.

Rollins strongly argues that the court's dangerousness assessment is clearly erroneous because Rollins will need surgery that removes the entire lower portion of his body and requires 24-hour care. Before his conviction in the present case, his only criminal history consisted of a decades-old conviction for unlawfully possessing a firearm when he was 17. Rollins reasons that he has successfully overcome the drug addiction that led him to crime and that he began abusing drugs only after going through the trauma of being paralyzed and subsequent depression.

Rollins makes a colorable argument. If he undergoes the hemicorporectomy procedure, he will be cut in half at the belly button. The surgery is rare, often fatal, and comes with various complications, even if the procedure is successful. As the district court notes, following any amputation of his lower body, "Mr. Rollins will need around the clock care for the foreseeable future." And even now, without this grave surgery, Rollins "cannot perform basic functions without assistance." Rollins is not wrong to suggest that it seems highly unlikely that he will revert to criminal behavior.

Rollins would have to undergo drug testing and treatment if released. According to him, the underlying cause for his criminal conduct would be sufficiently monitored. Finally, Rollins claims that he has spent a significant portion of his time incarcerated in a facility that has admitted it cannot fully

care for his needs.  His transfer to a BOP medical facility has been long delayed.  Contrary to the district court's reasoning, all this indicates that the prison system is not the place that can provide medical care most effectively.

Yet, the abuse-of-discretion standard is a demanding one.  It is not this court's place to question the reasonable judgment of the district court in assessing the § 3353(a) factors.[2]

The district court adequately explained its reasons for denying compassionate release.  The court acknowledged that Rollins was plainly suffering from medical crises for years before his arrest.  When he was arrested, Rollins "was wheelchair bound . . . [and] not receiving the medical care needed, as evidenced by his month-long hospitalization after his arrest."[3] Despite this appalling condition, while "stricken with severe medical issues and confined to a wheelchair, Mr. Rollins still trafficked heroin" and was found with multiple weapons in reach.  Rollins had committed serious crimes while suffering from severe and life-threatening medical complications.  With this in mind, it is not a clearly erroneous assessment of the evidence to find that Rollins may continue criminal activity and pose a danger to the public

---

[2] *See Jackson*, 27 F.4th at 1092–93 (finding, in compassionate-release cases, that the sentencing judge is in a better position to apply the sentencing factors because the district court has a unique role in sentencing matters and is in a better position to assess their import based on the individual circumstances of the case).  In *Chambliss*, for example, this court held that a district court did not abuse its discretion in denying compassionate release, even despite affirmatively finding that the prisoner's terminal illness was an "extraordinary and compelling reason" for a sentence reduction and that he did not present danger on release.  All that is required is that the district court "sufficiently articulate[]" its reasons for denying compassionate release and not base any necessary condition on a clearly erroneous assessment of the evidence.  *Chambliss*, 948 F.3d at 693–94.

[3] As noted in the record on appeal, New Orleans Police found Rollins "septic and severely malnourished at the time of his arrest . . . [lying] on the floor, where he had fallen from his wheelchair and was lying in his own feces and urine."

after release.

As a result, these findings are sufficient to affirm the denial of compassionate release. Disagreement with the weighing of the § 3553(a) factors is not "sufficient ground for reversal." *Chambliss*, 948 F.3d at 694. The district court did not clearly err in concluding that Rollins's "history, the serious nature of his offense, and the danger his release would pose to the community at-large" under 18 U.S.C. § 3553(a)(1) and (2)(C) weighed against granting relief.

Because the primary consideration for the district court's decision is concern for public safety, this court does not need to address whether the court's maintaining Rollins's sentence met the § 3553(a)(2)(D) factor for the sentence imposed to provide the defendant with needed medical care in the most effective manner. Still, the court did not clearly err in making its assessment. Rollins's poor health and ability to take care of himself when he was arrested, his noncompliance with treatment while incarcerated, and the BOP's assurances that it can provide Rollins with the intensive medical care he requires all sufficiently support the court's reasoning.[4]

As the district court noted in a hearing, "[i]t's been a difficult one from the beginning." Rollins has undoubtedly suffered and continues to suffer severely from his many health issues, and his medical condition is indeed dire. But the district court was familiar with his health issues. It considered them when it imposed his sentence, and it weighed the § 3553(a) factors adequately when it denied compassionate release. There was no abuse of discretion. We AFFIRM.

---

[4] We note that Rollins was designated to the Federal Medical Center in Fort Worth on October 7, 2022, and was transferred from Plaquemines on October 19, 2022.