United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 24, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-60621

STEPHEN BALLARD,

Plaintiff-Appellant,

versus

BRIAN BURTON,
individually and in his Official capacity;
OKTIBBEHA COUNTY, MISSISSIPPI,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi, Eastern Division,

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Stephen Ballard ("Ballard") appeals from the grant of summary judgment in favor of the

defendants, Brian Burton, Deputy Sheriff of the Oktibbeha County Sheriff's Office ("Burton"), and

Oktibbeha County, Mississippi, on his action brought pursuant to 42 U.S.C. § 1983. Ballard's

complaint alleges, in pertinent part, that Burton, individually and in his official capacity, caused

permanent injuries by shooting Ballard during an arrest attempt. The essence of Ballard's claim is that

Burton violated his Fourth Amendment rights by using excessive force that rendered him permanently

paraplegic.

On appeal, Ballard contends that the district court erred in its determination that (1) pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994),[1] Ballard was collaterally estopped from bringing this § 1983 claim due to his state conviction for simple assault on a law enforcement officer; and (2) *Heck* applies to this § 1983 action even though the state conviction was obtained via a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).[2] We agree with Ballard's contention that *Heck* does not bar his claim. Nevertheless, we affirm the district court's summary judgment against Ballard because the summary judgment record does not reveal a Fourth Amendment violation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stephen Ballard, while armed with a 30/30 rifle, was shot during a confrontation with Mississippi law enforcement officers. Following the incident, Ballard was charged with two counts of simple assault on a law enforcement officer and one count of aggravated assault on a law enforcement officer. Ballard was convicted on two counts of the indictment. But these convictions were overturned by the Mississippi Supreme Court on the basis that the trial court erred by not allowing testimony on Ballard's insanity defense. On remand, instead of defending himself at trial, Ballard pleaded guilty to the charge of simple assault on Deputy Leroy Boling, pursuant to *North Carolina v. Alford*, admitting only that he put Boling in fear and that he fired the 30/30 rifle several times while he was near officers.

---

[1] The Court in *Heck* held that an inmate could not challenge the constitutionality of his state conviction in a subsequent suit for damages brought pursuant to 42 U.S.C. § 1983 if a judgment in his favor in the § 1983 action would undermine the validity of the state conviction.

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970) permits a defendant to enter a guilty plea to the underlying offense charged, while affirmatively maintaining his factual innocence.

Ballard then filed the instant action pursuant to 42 U.S.C. § 1983, alleging that Burton and Oktibbeha County violated his Fourth Amendment rights against use of unreasonable force. The defendants moved for summary judgment, contending that Ballard was barred from bringing this action under the "favorable termination rule" established in *Heck*. In addition to the pleadings, the parties filed excerpts from the trial transcript, depositions, and other documents in support of, or opposition to, the motion for summary judgment. The following factual background is drawn from disputed and undisputed statements in the pleadings and other documents presented to the district court prior to its ruling on the motion for summary judgment.

On or about August 11, 1996, Ballard sought psychiatric treatment from the Oktibbeha County Hospital after he and his wife had a heated argument. Ballard was suicidal at the time he sought treatment but was not admitted into the hospital and did not receive any medical attention. Ballard left the hospital and armed himself with a 30/30 caliber rifle. Because of his disturbed mental condition, he "irrationally drove" through Starkville, Mississippi, stopping occasionally to fire his gun in the air and to threaten his own life. Law enforcement officers from the Okitibbeha County Sheriff's Office and the Starkville Police Department were notified and followed him in patrol cars.

The last time Ballard stopped, Deputy Leroy Boling was in the first patrol car behind him. Boling exited the patrol car and crouched down behind its open door. Ballard came toward Boling with the rifle down, pointing toward Boling but not "up sighting" him. Boling asked Ballard to stay back and put the weapon down, but Ballard refused. Boling testified that the rifle was aimed at Boling's head because that was the only thing showing, and that he could vividly see the end of the rifle's barrel. Ballard then pointed the rifle at an upward angle that Boling and other law enforcement officers described as "port arms."

By this time, Starkville Police Lieutenant Keith Davis had arrived, exited his patrol car and gone to the back of Boling's patrol car. Deputy Charles Cole, Jr., who arrived at the scene in Davis' patrol car, remembered seeing Ballard in front of Boling's car with a rifle and with Boling pinned down behind his car. Cole testified that he saw Ballard pointing the gun at Boling and that he felt like Ballard was pointing the gun at everyone there.

Boling moved to join Davis at the rear of Boling's patrol car. Ballard put the rifle up under his chin and said, "Watch this," then lowered the rifle. Ballard again pointed the rifle at the upward port arms angle while he pulled up his shirt and patted his chest with his free hand. Ballard indicated his chest was a target and told the officers to shoot at him. Ballard fired a shot in the air, then lowered the rifle toward Davis. Burton saw Ballard talking to Davis and Boling, and saw Ballard lower the gun toward Davis. Likewise, Deputy Brett Watson saw Ballard aim at Davis and believed Ballard "was fixing to kill Lieutenant Davis and possibly Lieutenant Boling." Watson shot Ballard with a shotgun, but it seemed to have little effect. Ballard "just swayed back a little bit and then went back with the gun towards the two officers." Watson's shotgun jammed, but he cleared the jam, fired a second time, and saw Ballard fall backwards onto the concrete. At the same time that Watson aimed and fired his second shot, Burton aimed at Ballard's mouth and shot him. The shot to Ballard's mouth caused severe damage to his spinal cord and rendered him permanently paraplegic.

Ballard's complaint asserts that Burton knew Ballard's rifle was empty prior to taking aim and shooting him, and that Burton therefore had no reason to believe that any of the officers were in imminent danger. The complaint further alleges that, under these circumstances, Burton's decision to shoot him was unreasonable and amounted to a use of excessive force, in violation of § 1983, and that this use of unreasonable force rendered him paraplegic. The complaint also asserts as a proximate

4

contributing cause of Ballard's injuries the gross negligence of Oktibbeha County, Mississippi, via its failure to properly train Burton and other officers how to handle a suicidal person without killing him.

Presented with pleadings, testimony, and other documents that included the foregoing as both disputed and undisputed facts, the district court directed the parties to brief the issue of whether *Heck*'s favorable termination rule bars Ballard from bringing his § 1983 action, in light of the *Alford* nature of Ballard's state conviction. Reasoning that (1) Ballard's *Alford* plea was a conviction and was not a "favorable termination" and (2) *Heck*'s favorable termination rule applies to preclude Ballard's § 1983 claim, the district court subsequently granted the defendants' motion for summary judgment against Ballard.

Ballard appeals the judgment against him, asserting that his *Alford* plea does not have the same collateral estoppel effect as a non-*Alford* guilty plea and that *Heck*'s favorable termination rule does not bar his § 1983 action. While we agree with the district court that the *Alford* nature of Ballard's state conviction has no effect on its use for *Heck* purposes, we find that *Heck*'s favorable termination rule does not apply to the instant circumstances. Nevertheless, because the summary judgment record does not support at least one element necessary for Ballard to prevail in his § 1983 claim, we affirm.

## II. DISCUSSION

A. Standard of Review

We review de novo a district court's grant of a motion for summary judgment, applying the same standard as the district court did in the first instance. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes

5

"there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Cronn v. Buffington*, 150 F.3d 538, 541 (5th Cir. 1998). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden. *Celotex v. Catrett*, 477 U.S. 317, 327 (1986).

B. *Heck*'s Favorable Termination Rule

It is well settled that, under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir. 1999). "*Heck* requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (citation omitted). This requirement or limitation has become known as the "favorable termination rule." *Sappington*, 195 F.3d at 235.

As a preliminary matter, we address Burton's assertion that his conviction cannot be used to bar his excessive force claim because it is based on an *Alford* plea.

6

1. *Collateral Consequences of an Alford Plea*

Ballard argues that because he entered an *Alford* plea, his simple assault conviction cannot be used to impose *Heck*'s favorable termination rule. We disagree. Although a res nova issue in regard to *Heck*, various Courts of Appeals have deemed an *Alford* plea the procedural equivalent of a non-*Alford* guilty plea.[3] We likewise view an *Alford* plea as nothing more than a variation of an ordinary guilty plea. Moreover, we are not persuaded by Ballard's suggestion that, because his plea was pursuant to *Alford*, there is an insufficient factual basis to support a finding that his simple assault conviction was terminated unfavorably. "Once accepted by a court, it is the voluntary plea of guilt itself, with its intrinsic admission of each element of the crime, that triggers the collateral consequences attending that plea. Those consequences may not be avoided by an assertion of innocence." *Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1554 (11th Cir.1993) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Accordingly, we hold that a conviction based on an *Alford* plea can be used to impose *Heck*'s favorable termination rule.

Because Ballard has failed to establish that his state conviction for simple assault was terminated in his favor, we shall examine whether his § 1983 claim alleging excessive force is otherwise barred by *Heck*.

---

[3] *See, e.g.*, *Burrell v. United States*, 384 F.3d 22, 29 (2d Cir. 2004) ("A guilty plea under the *Alford* doctrine is the functional equivalent to an unconditional plea of nolo contendere which itself has the same legal effect as a plea of guilty on all further proceedings within the indictment. The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case." (citation omitted)); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) ("An *Alford*-type guilty plea is a guilty plea in all material respects."); *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (same); *see also Watson v. New Orleans City*, 275 F.3d 46 (5th Cir. 2001) where we applied *Heck*'s favorable termination rule to a Louisiana conviction obtained via a no contest plea noting that, under Louisiana law, a no contest plea constitutes a conviction.

2. *Applicability of Heck's Favorable Termination Rule*

The policy undergirding the favorable termination rule is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. This principle is another manifestation of the doctrine of issue preclusion or collateral estoppel, i.e., the policy of finality that prevents the collateral attack of a criminal conviction once the matter has been litigated. *See id.* at 484-85 ("[The Supreme] Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." (citations omitted)). The *Heck* Court determined that this principle of collateral estoppel "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 486. If a judgment in the plaintiff's favor would necessarily imply that his conviction is invalid, then the § 1983 action is not cognizable unless the conviction were reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding. *See id.* at 487; *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996). Therefore, "[t]he maturity of a section 1983 claim . . . depends on 'whether a judgement in [the plaintiff's] favor . . . would necessarily imply the invalidity of his conviction.'" *Hudson*, 98 F.3d at 872 (alteration in original) (citing *Heck*, 512 U.S. at 487).

Thus, in order to determine whether *Heck*'s favorable termination rule precludes Ballard's § 1983 claim that Burton used excessive force, we first must determine whether a judgment in Ballard's favor on this claim would necessarily imply the invalidity of Ballard's simple assault conviction. We conclude that it would not.

Ballard was convicted of simple assault of a law enforcement officer in violation of section 97-3-7 of the Mississippi Code. This section provides, in pertinent part, as follows:

> A person is guilty of simple assault if he . . . (c) attempts by physical menace to put another in fear of imminent serious bodily harm . . . However, a person convicted of simple assault [upon a law enforcement officer while the law enforcement officer is acting within the scope of his employment] . . . shall be [imprisoned] for not more than five (5) years . . . .

Miss. Code Ann. § 97-3-7. Count two of the indictment, to which Ballard entered the *Alford* plea, states that,

> on or about the twelfth day of August, in Oktibbeha County [Ballard] did unlawfully, willingly, feloniously, purposely, and knowingly attempt by physical menace to put Leroy Bolen [sic], a law enforcement officer with the Oktibbeha County, Mississippi Sheriff's Department in fear of imminent serious bodily harm at a time when the said Leroy Bolen [sic] was acting within the scope of his official duties and office, by pointing a gun at the said Leroy Bolen [sic] without authority of law and not in necessary self-defense.

As part of his *Alford* plea, Ballard admitted that he put Boling in fear and that he fired the 30/30 rifle several times while he was near officers.

To prevail on his § 1983 claim for damages due to Burton's use of excessive force, Ballard must prove, inter alia, that Burton's use of deadly force was objectively unreasonable in the circumstances.[4] *See Graham v. Connor*, 490 U.S. 386, 395-97 (1989). Therefore, the dispositive question in determining whether *Heck* applies to preclude Ballard's § 1983 claim is as follows: Would a finding that Burton's use of force was objectively unreasonable necessarily call into question the validity of Ballard's conviction for simple assault upon Boling? If it is possible for Ballard to have assaulted Boling *and* for Burton's shooting of Ballard to have been objectively unreasonable, then

---

[4] While Ballard must establish additional elements to prove his excessive force claim, as discussed in Part II.C., *infra*, the only element at issue in this case is the objective reasonableness of Burton's use of force.

*Heck* does not bar Ballard's claim. On the other hand, if the only way that Burton's shooting of Ballard could be objectively reasonable is for Ballard to have assaulted Boling, then *Heck* bars Ballard's excessive force claim.

In *Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999), law enforcement officer Garcia appealed the district court's denial of his motion for summary judgment on a claim that he had used excessive force against Sappington. The district court had reasoned "that [Sappington's] conviction for assaulting Garcia does not necessarily imply the invalidity of his criminal conviction because under Texas law, unlike Louisiana law, the use of force to resist arrest is justified only if, among other elements, the arresting peace officer uses unnecessary force before the actor offers any resistance." *Sappington*, 195 F.3d at 236 (citation and internal quotation marks omitted). Sappington's conviction for aggravated assault required proof that he caused serious bodily injury to Garcia. *Id.* at 237. This court determined that his conviction necessarily implied that Garcia did not use excessive force and held that, as a matter of law, the force Sappington claimed was used could not, under *Heck*, be deemed excessive. This determination and holding were based on Texas laws which provide that (1) as an individual, Garcia "could use force up to and including deadly force to protect himself against the other's use or attempted use of unlawful deadly force[,]" and (2) as a peace officer, Garcia could use deadly force in the course of an arrest if he reasonably believed that there was a substantial risk that the person to be arrested would cause serious bodily injury if the arrest were delayed. *Id.*

In *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000), this court was faced with a district court holding that *Heck* did not bar Hainze's § 1983 suit because "a conviction for aggravated assault against a police officer does not necessarily preclude a finding of excessive force against the assaulter." *Hainze*, 207 F.3d at 798 (citation and internal quotation marks omitted). Nevertheless,

the district court granted summary judgment on the § 1983 claim because it determined that, though *Heck* did not apply, the officers' actions under the circumstances were objectively reasonable and therefore they were entitled to qualified immunity. On appeal, this court stated that, "[s]ubsequent to the district court's decision we held that, based on *Heck*, an excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events." *Hainze*, 207 F.3d at 798 (citation omitted). This court disagreed with the district court's determination that *Heck* did not apply but concluded that summary judgment was appropriate because, "as in *Sappington*, the force used by the deputies to restrain Hainze, up to and including deadly force, cannot be deemed excessive." *Id.* at 798-799.

The Texas statute in *Sappington* and *Hainze* authorized use of deadly force upon reasonable belief that there was imminent danger of serious bodily injury. Those decisions turned on the fact that, because serious bodily injury to the defendant was an element of the § 1983 plaintiff's conviction, it was impossible for the defendant to have used excessive force because the statute authorized use of deadly force to defend against the bodily injury that the § 1983 plaintiff had inflicted upon him.[5] We note that, facially similar to the Texas justification statute, Mississippi's justifiable homicide statute provides that (1) as a law enforcement officer, Burton's use of deadly force is justified "in overcoming actual resistance to the execution of some legal process, or to the discharge of any other legal duty," Miss. Code Ann. § 97-3-15 (1)(b); and (2) as an individual, Burton's use of deadly force

---

[5] *Hudson v. Hughes* also involved state law that made the § 1983 plaintiff's allegations of excessive force necessarily inconsistent with his conviction. There, we stated that, "[b]ecause self-defense is a justification defense to the crime of battery of an officer, [the plaintiff's] claim that [the defendants] used excessive force while apprehending him, if proved, would necessarily imply the invalidity of his arrest and conviction for battery of an officer." *Watson v. New Orleans City*, 275 F.3d 46 (5th Cir. 2001) (quoting *Hudson*, 98 F.3d at 873).

11

is justified "[w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished," Miss. Code Ann. § 97-3-15 (1)(f). Nevertheless, we distinguish the analysis and application of *Heck* in *Sappington* and *Hainze*.

Hainze* and *Sappington* each involved a conviction for aggravated assault under Texas law where the assault was against a defendant in the § 1983 claim for excessive force. Each of those convictions required proof that the § 1983 plaintiff had caused serious bodily injury. By contrast, Ballard's conviction was for assault, by physical menace, on an officer who is not a defendant in his § 1983 claim. Ballard's conviction did not require proof that he caused bodily injury, serious or otherwise. Not a single element of Ballard's simple assault conviction would be undermined if Ballard were to prevail in his excessive force claim against Burton or Oktibbeha County. For this reason, unlike the *Hainze* and *Sappington* convictions, Ballard's Mississippi conviction for simple assault does not, as a matter of law, necessarily imply that Burton did not use excessive force as alleged in the instant complaint.

We also factually distinguish *Sappington* because Ballard's § 1983 claim of excessive force is conceptually different than his conviction for simple assault such that "a successful suit on the former would not necessarily imply the invalidity of the latter." *Hudson*, 98 F.3d at 873 (citing *Smithart*, 79 F.3d at 952-953). Undisputed in the summary judgment record is the fact that Ballard pointed the rifle in the general direction of Boling before Burton arrived at the scene and in the general direction of Boling and Davis after Burton arrived at the scene. When recovered, it was determined that, but for a spent cartridge, the rifle was empty prior to the time Ballard allegedly

12

pointed it toward Boling and Davis. Ballard admitted that he put Boling in fear and that he fired the 30/30 rifle several times while near officers. On these undisputed facts, a determination that Burton used unreasonable force tends to neither prove nor disprove the validity of Ballard's conviction for assaulting Boling. During the course of events from Ballard's "irrational" drive through Starkville to the times he exited his truck and fired the rifle near officers, Ballard's behavior satisfied the elements for simple assault against Boling, as charged in the indictment to which he pled guilty, both before and after Burton arrived at the scene of the final confrontation. A finding that Burton's use of force was unreasonable would imply neither that Ballard did not attempt by physical menace to put Boling in fear of imminent bodily harm, nor that Ballard's assault on Boling was in necessary self defense.

Although we have distinguished *Sappington*, our method of analysis remains consistent. The *Sappington* court analyzed the circumstances attendant to the conviction and carefully compared them with the allegations in the § 1983 complaint and the remainder of the summary judgment record. We noted that the theoretical possibility that Garcia might have used excessive force after Sappington offered resistance was completely at odds with the summary judgment record in which Sappington stated that his physical contact with Garcia occurred only after he was "maced and/or assaulted" by the defendant law officer(s) and "that the physical contact between [Sappington] and Garcia began when Garcia grabbed his wrist." *Sappington*, 195 F.3d at 237. Accordingly, we did not address the mere possibility that Garcia could have used unreasonable force *and* that Sappington could have committed the aggravated assault. Instead we looked to the circumstances presented in the summary judgment record and found "[Sappington's] claim [ ] necessarily inconsistent with his criminal conviction." *Id.*

13

When we look to the circumstances presented in the instant record, we find that Ballard's allegations that Burton used excessive force are not necessarily inconsistent with his conviction. The circumstances in this summary judgment record involve a time period during which Ballard pointed the rifle out of his truck while driving in front of Boling, and another time period during which Ballard pointed the rifle toward Boling before Burton and other officers arrived.[6] In addition, there is disputed testimony that Ballard was observed pointing his rifle at Boling as well as at Davis and/or at Davis and Boling near the time Burton shot Ballard. A finding that Burton's use of force was unreasonable would not necessarily mean that Ballard did not attempt by physical menace to put Boling in fear of imminent serious bodily harm. Based on the events described in the summary judgment record, we conclude that a judgment in Ballard's favor on his § 1983 claim against Burton and Oktibbeha County could easily coexist with Ballard's conviction for simple assault of Boling, without calling into question any aspect of that conviction.

This is not the first time we have noted circumstances where a plaintiff's prior conviction is not inconsistent with his claim of excessive force. In *Wells v. Bonner*, 45 F.3d 90, 95 (1995), we assumed without deciding that a successful excessive force claim would not imply the invalidity of a conviction for resisting a search. In *Hudson v. Hughes*, 98 F.3d at 872-873, we discussed *Smithart v. Towery*, 79 F.3d 951, 952-953 (9th Cir. 1996), where the Ninth Circuit addressed whether a successful excessive force claim would imply the invalidity of a conviction for assault. The *Smithart* court "reasoned that the plaintiff's claim that officers used force far greater than that required for his arrest is conceptually distinct from his conviction for assault with a deadly weapon, and that a

---

[6]Ballard denies pointing the rifle at any officer, but the indictment to which he pled guilty stated that he pointed the rifle "at the said Leroy Bol[ing]."

successful suit on the former would not necessarily imply the invalidity of the latter[,]" *Hudson*, 98 F.3d at 873, and "concluded that *Heck* does not bar a civil rights action alleging excessive force brought after the plaintiff entered an *Alford* plea to a charge of assaulting the arresting officers with a deadly weapon," *id*. at 872-873. Considering *Smithart*'s reasoning, we stated that "this observation may be applicable in many section 1983 claims of excessive force . . . ." *Id.* at 873. Today we find this *Smithart* reasoning applicable to the unique factual scenario at bar.

In an unpublished opinion, we examined various applications of *Heck* and concluded that "the *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 Fed. Appx. 321, 323 (5th Cir. June 14, 2004). Though this quotation from *Slaughter* is not binding, it is persuasive.[7] The nature of Ballard's simple assault conviction and the nature of his excessive force claim are such that a judgment in favor of Ballard on his § 1983 claim would not undermine the validity of his conviction. For the foregoing reasons, we find that the district court erred in its determination that *Heck*'s favorable termination rule bars this § 1983 action for use of excessive force.

C. Fourth Amendment Violation

The defendants' motion for summary judgment asserts that Ballard cannot establish a prima facie case of liability against them as alleged because this record does not show a Fourth Amendment violation of Ballard's rights by either Burton's shooting or Oktibbeha County's alleged failure to train. The motion further asserts that, as a political subdivision and its employee, the defendants are immune from liability under these circumstances. The district court found that *Heck* barred Ballard's

---

[7] An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority. 5th Cir. R. 47.5.4.

claims, and therefore reached neither the defendants' assertions that there exist no genuine issues of material fact that preclude entry of summary judgment in their favor nor the defendants' assertions of qualified immunity.

Even though we have concluded that the reasons given by the district court do not support the summary judgment entered against Ballard, we may affirm this judgment on any other grounds supported by the record. *Lifecare Hosp., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1534 n.12 (5th Cir. 1994)). Therefore, we now examine whether, viewing the record in the light most favorable to Ballard, summary judgment against him was proper.

In order to succeed on a § 1983 claim that the defendants violated his Fourth Amendment right against excessive force, a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citations and internal quotation marks omitted); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In this "reasonableness" inquiry,

> the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

16

*Id.* at 397. "Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

The only disputed element of Ballard's excessive force claim is whether Burton's use of force was unreasonable. Viewed in the light most favorable to Ballard, the facts are as follows:

After his attempt to get treatment at the hospital failed, Ballard was mentally disturbed and suicidal. He armed himself with a 30/30 rifle and "irrationally drove" through Starkville, Mississippi. Ballard stopped at least twice, got out of his truck and fired shots into the air. The rifle held a total of seven rounds and was fully loaded and discharged by Ballard during his irrational drive-stop-get-out-of-the-truck-and-shoot activity. The last time Ballard got out of his truck, officers asked him to put down the rifle but he refused. Ballard fired another shot into the air, placed the rifle at port arms, pulled up his shirt and told the officers to shoot using his chest as the target. Ballard then began to lower the rifle. Illuminated by lights from one or more patrol cars and a flashlight held by Davis or Boling, Ballard could not see Davis or Boling even though he was within ten or fifteen feet of them. Ballard had discharged, but did not afterward cock his rifle. Seeing Ballard begin to lower the rifle toward two law enforcement officers, Watson shot Ballard with a shotgun, but the pellets did not appear to affect Ballard. As Watson cleared a jam in theshotgun, Burton carefully aimed at Ballard's mouth. Burton shot Ballard at the same time that Watson fired a second shot. Burton's shot rendered Ballard permanently paraplegic. At the time Ballard was shot, his rifle was pointed in the air, not at Davis or Boling.

Burton was confronted with a mentally disturbed person who had, during the course of the night's events refused to put down his rifle, discharged the rifle into the air several times while near

17

officers, and pointed it in the general direction of law enforcement officers.[8] We find that, regardless of the direction in which Ballard pointed the rifle just before he was shot, a reasonable officer in these circumstances would have reason to believe that Ballard posed a threat of serious harm to himself or to other officers. Because a reasonable officer in these circumstances may or may not have known or calculated how many rounds had been fired or how many rounds remained in Ballard's rifle, it is immaterial whether Burton knew that Ballard's rifle was uncocked or that it contained only a spent cartridge. Accordingly, Burton's use of force was not unreasonable. *See Mace*, 333 F.3d at 624 ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." (citation omitted)).

The record reveals that factual disputes abound regarding what happened immediately before Burton shot Ballard: the angle and direction in which the rifle was pointed, whether Ballard had cocked the rifle, whether Ballard pointed the rifle toward Davis and Boling, and whether Burton knew that the rifle was uncocked and/or unloaded and therefore not a danger to anyone. Moreover, Ballard urges that because he entered his plea under *Alford*, he did not admit facts in the plea agreement that could demonstrate that he placed officers Davis and Boling in imminent danger. Nevertheless, when we view this record in the light most favorable to Ballard and judge Burton's use of force from the perspective of a reasonable officer at the scene, these factual disputes do not present issues of material fact about the objective reasonableness of Burton's use of force. Because Burton's actions were objectively reasonable, his knowledge about whether Ballard's rifle was cocked or

---

[8]Although Ballard denied pointing the rifle at any officer, he admitted that he put Boling in fear and that he fired the 30/30 rifle several times while he was near officers. The fact that Ballard pointed the gun at law enforcement officers during the course of the night's events is, at least in some sense, undisputed by virtue of his guilty plea.

loaded is of no moment. *See Graham*, 490 U.S. at 397 (stating that an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force).

We find that, viewed in the light most favorable to Ballard, this summary judgment record reveals that Burton's use of force was not unreasonable and that, therefore, neither Burton nor Oktibbeha County violated Ballard's Forth Amendment rights against excessive use of force.

### III. CONCLUSION

For the foregoing reasons, we conclude that, even though *Heck* does not bar Ballard's 42 U.S.C. § 1983 claims for excessive use of force and failure to train, on this summary judgment record Ballard cannot establish that the defendants violated his Fourth Amendment rights. As a result, his § 1983 claims are not cognizable and we AFFIRM the district court's order granting summary judgment in favor of the defendants.