# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2022

Lyle W. Cayce
Clerk

No. 21-60092

BALASUNTHARAM THRAIYAPPAH,

*Petitioner*,

*versus*

MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A203 716 752

Before WIENER, GRAVES, and HO, *Circuit Judges*.

PER CURIAM:*

Balasuntharam Thraiyappah petitions for review of the Board of Immigration Appeals' (BIA) decision dismissing an appeal of the Immigration Judge's (IJ) denial of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA erred in concluding its affirmance of the IJ's adverse credibility

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

determination effectively disposed of Thraiyappah's pattern-or-practice claim for CAT protection based on his Tamil ethnicity, we GRANT the petition, VACATE in part and REMAND to the BIA.

## FACTS AND PROCEDURAL HISTORY

Balasuntharam Thraiyappah, a native and citizen of Sri Lanka, entered the United States without proper documentation on November 8, 2019.   As a result, Thraiyappah was charged with violations of the Immigration and Nationality Act (INA).  *See* 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I).  Thraiyappah conceded the charges and sought political asylum and withholding of removal to Sri Lanka under the INA and the Convention Against Torture (CAT) on the basis of race, nationality, political opinion and membership in a particular social group (PSG).  *See* 8 U.S.C. §§ 1158, 1231.

During a credible fear interview, Thraiyappah told the asylum officer (AO) that he was ethnic Tamil and afraid to return to Sri Lanka because he had been threatened, beaten, and had his home searched by the Criminal Investigation Department (CID) of the Sri Lankan Army, which he said essentially belonged to the Sinhalese ethnic majority.  Thraiyappah asserted that the actions were the result of his organization of and participation in a memorial for 117 victims of a February 1986 massacre in which his father was killed.[1]  Specifically, Thraiyappah said authorities detained and questioned him in January 2018.  He said then, in February 2018, authorities forced him into a van, where he was blindfolded and his hands tied, and transported him to an army camp for interrogation.  Thraiyappah asserted that he was questioned, beaten, and told he would be killed if he repeatedly conducted

---

[1] Thraiyappah said that the public memorial events began in 2017.

No. 21-60092

such events.  Thraiyappah also said that armed men went to his house looking for him when he was not home and warned his wife in February 2019.

Thraiyappah said he did not openly participate in planning the 2018 memorial but anonymously helped in other ways.  He also said his only participation in the 2019 memorial event was that he made a telephone call to order milk.  Further, Thraiyappah said that his mother was largely responsible for the memorial event, but she had never been threatened.  Thraiyappah alleged he had been harmed by the CID but conceded that he did not have any injuries and did not seek medical treatment.  Thraiyappah also conceded that authorities had not interfered with his job, he did not know whether anyone was currently looking for him in Sri Lanka, he had no knowledge of any other organizers being threatened, and he had suffered no other harm.  Nevertheless, Thraiyappah said that he believed he would be caught and killed if he returned to Sri Lanka.

At his merits hearing, Thraiyappah's testimony was inconsistent with his earlier statements to the AO.  He testified about various injuries, including loss of hearing, bruising, swollen eyes and lips, and sprains in his neck, back and fingers.  He also testified that his "mother did some home remedies," i.e., applied oil and herbs for pain and swelling over two days, to treat his injuries because he would have been in danger if he had gone to a hospital.

The IJ denied relief and ordered Thraiyappah to be removed to Sri Lanka on July 8, 2020.  Thraiyappah appealed, and the BIA dismissed his appeal on January 3, 2021.  Thraiyappah then filed a Petition for Review with this court.

## STANDARD OF REVIEW

On a petition for review, this court reviews only the BIA's decision, unless the IJ's decision had some impact on the BIA's decision. *Fuentes-Pena*

*v. Barr*, 917 F.3d 827, 829 (5th Cir. 2019); *see also Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). To the extent that the BIA relied on the IJ's findings and conclusions, this court may consider the decisions of both the IJ and the BIA. *Fuentes-Pena*, 917 F.3d at 829. Here, the BIA determined that the IJ's credibility findings were not clearly erroneous. Thus, this court has the authority to review those portions of the IJ's decision that impacted the BIA, as well as the BIA's decision. *Id.*

Factual findings are reviewed for substantial evidence, "meaning that we will accept the BIA's factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." *Id.*, 917 F.3d at 829 (internal marks and citations omitted). "Under substantial evidence review, this court may not reverse the BIA's factual findings unless the evidence compels it." *Wang*, 569 F.3d at 536-37; *see also Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) ("[R]eversal is improper unless the court decides not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.") (internal marks and citation omitted) (emphasis original). An adverse credibility determination must be supported by substantial evidence. *See Avelar-Oliva v. Barr*, 954 F.3d 757, 763 (5th Cir. 2020). We review questions of law de novo. *Fuentes-Pena*, 917 F.3d at 829.

## DISCUSSION

### I. Whether the BIA erred in denying Thraiyappah's request to remand for the IJ to adjudicate his failed claim for asylum under 8 C.F.R. § 208.13(b)(2)(iii)(A).

Thraiyappah asserts that the BIA erred in denying his request for remand to adjudicate his claim for asylum based on his putative returned asylum seeker status under 8 C.F.R. § 208.13(b)(2)(iii)(A). In his brief to the BIA, Thraiyappah asserted that, during closing, his counsel said he would be persecuted on account of his returned asylum seeker status but the IJ did not adjudicate it. The BIA determined that the issue was not fully developed by

Thraiyappah, who has the burden of proof to establish eligibility for relief. Thus, the BIA found Thraiyappah failed to establish that the IJ erred and concluded that remand was not warranted on this issue. On appeal, Thraiyappah asserts that the "brief statement" during closing was sufficient and the IJ was required to adjudicate the claim.

We review the BIA's denial of a motion to remand "under a highly deferential abuse-of-discretion standard." *Milat v. Holder*, 755 F.3d 354, 365 (5th Cir. 2014) (internal quotation marks and citation omitted). We will affirm the denial of a remand motion "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.* (internal quotation marks and citation omitted).

The BIA must review the record as created before the IJ. *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 190 (BIA 2018). "The Board is an appellate body whose function is to review, not to create, a record. It is therefore imperative that the parties fully develop the record before the [IJ]." *Id.* Generally, the BIA will not consider a claim that was not presented to the IJ. *See id.*; *see also Eduard v. Ashcroft*, 379 F.3d 182, 195 n.14 (5th Cir. 2004) (noting that the BIA need not consider claims raised for the first time on appeal). An applicant "must clearly indicate on the record before the [IJ] what enumerated ground(s) she is relying upon in making her claim." *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. at 191 (internal quotation marks and citation omitted). Accordingly, "although it is within the BIA's prerogative to evaluate a reformulated PSG based on the record below," declining to do so does not establish reversible error. *Cantarero-Lagos v. Barr*, 924 F.3d 145, 151 (5th Cir. 2019).

Here, Thraiyappah testified generally about the treatment of Tamils by Sinhalese members of the Sri Lankan government, police, and army, but

he offered no testimony about the government's treatment of returning asylum seekers. Instead, Thraiyappah simply said that, if he was returned to Sri Lanka, he would be caught and killed because the Sri Lankan government believed he was leading and organizing the memorial. When asked if there was any other reason why he would be harmed, he responded: "No. This is the only reason." Had he offered such evidence, it would have allowed the IJ to make factual findings about whether Thraiyappah would face persecution or torture if the Sri Lankan government knew he had sought asylum in the United States.

Because Thraiyappah failed to fully develop this claim before the IJ, the BIA did not abuse its discretion in denying his motion to remand. *See Milat*, 755 F.3d at 365.

## II. Whether the BIA erred in affirming the IJ's adverse credibility determination.

Thraiyappah asserts that the IJ's adverse credibility findings are not supported by substantial evidence. Specifically, Thraiyappah argues that the IJ's reliance on the credible fear interview worksheet and failure to ask for explanations for any discrepancies were major errors.

The BIA has previously held that "an adverse credibility determination should not be based on inconsistencies that take an alien by surprise" and that the applicant must have the opportunity to clarify perceived inconsistencies that are not plainly obvious. *Matter of Y-I-M-*, 27 I. & N. Dec. 724, 726-29 (BIA 2019); *see also Matter of B-Y-*, 25 I. & N. Dec. 236, 242-43 (BIA 2010) ("If an inconsistency is obvious or glaring or has been brought to the attention of the respondent during the course of the hearing, however, there is no requirement that a separate opportunity for explanation be provided prior to making the adverse credibility determination.").

No. 21-60092

However, this court's unpublished authority appears to be in tension with the BIA.

In *Meza Benitez v. Garland*, No. 19-60819, 2021 WL 4998678 (5th Cir. Oct. 27, 2021) (unpublished), this court rejected the proposition that the IJ is required to provide an applicant an opportunity to explain discrepancies before making an adverse credibility determination. [2] *See id.* at *3; *see also Singh v. Garland*, 850 F. App'x 920, 920 (5th Cir. 2021); *Alvarado-Rivas v. Holder*, 547 F. App'x 630, 631 (5th Cir. 2013); *Mpesse v. Garland*, No. 20-61207, 2021 WL 4256177, *5 (5th Cir. Sept. 17, 2021) (unpublished) (An inconsistency is obvious when it is reasonable to assume that the petitioner was aware of it and had an opportunity to explain before the IJ relied on it).

Even under the BIA standard, the perceived inconsistencies here were plainly obvious.  Thraiyappah and his counsel would have had copies of his application, his attached statement and exhibits, and the credible fear interview worksheet.  *See Matter of Y-I-M*, 27 I. & N. Dec. at 727-29. Thraiyappah also had an opportunity to clarify or explain any perceived inconsistencies and omissions in his prior statements during the merits hearing.  *See id.* at 729.  Moreover, at the start of his merits hearing, the IJ asked Thraiyappah if he had any corrections to his I-589 application. Thraiyappah's only correction was to say that he was on a motorbike when two people grabbed him.  He then affirmed that no additional corrections were needed.  We are persuaded by this court's prior unpublished case law in concluding that the IJ did not err by failing to give Thraiyappah an opportunity to clarify any inconsistencies.

---

[2] Unpublished opinions issued after January 1, 1996 are not controlling precedent but may be persuasive authority.  *See* 5th Cir. R. 47.5.4; *see also Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

### III.  Whether the BIA erred in concluding that its affirmance of the IJ's adverse credibility determination effectively disposed of Thraiyappah's pattern-or-practice claim for asylum and CAT protection based on his Tamil ethnicity.

Thraiyappah asserts that an adverse credibility finding pertaining to past experience has no bearing on his asylum claim or on his eligibility for protection under the CAT based on his Tamil ethnicity.  Thraiyappah also asserts that the IJ's adverse credibility findings were not supported by substantial evidence.

This court recently addressed this issue in *Arulnanthy v. Garland*, 17 F.4th 586 (5th Cir. 2021), concluding that the BIA erred by treating the adverse credibility determination as dispositive of Arulnanthy's CAT claim. *Id.* at 596-97.  The court reiterated that "CAT claims are distinct from asylum and withholding-of-removal claims and should receive separate analytical attention."  *Id.* at 598 (internal marks and citation omitted).  Also, the court said:

> Here, the BIA violated the CAT regulations by ignoring Arulnanthy's hundreds of pages of evidence about country conditions in Sri Lanka. The applicable regulation, 8 C.F.R. § 1208.16(c)(3), in fact *requires* the BIA to consider evidence of gross, flagrant or mass violations of human rights within the country of removal and any other relevant information regarding conditions in the country of removal in its likelihood-of-torture assessment. That provision has no exception for cases of adverse credibility determinations. The BIA's decision did not even pretend to consider Arulnanthy's country-conditions evidence, much of which went to human-rights violations. That lack of consideration was error.

*Id.* (internal marks omitted) (emphasis original).

This court also concluded that Arulnanthy was not entitled to a presumption of subjective fear of future persecution based on his past

persecution for his asylum claim. The court said that Arulnanthy "instead must prove his subjective fear to win his asylum claim." *Id.* at 596. Further, the court concluded that the IJ's "broad adverse credibility determination foreclose[d] a showing of subjective fear," and Arulnanthy could not establish a subjective fear of persecution. *Id.* at 597.

Similarly, here the adverse credibility determination forecloses Thraiyappah's asylum claim based on future persecution. *Id.* at 596-97. The IJ rejected all of his testimonial evidence as generally not credible which the BIA concluded was not clearly erroneous. The administrative record establishes that the adverse credibility determination was supported by substantial evidence. The "broad adverse credibility determination foreclose[d] a showing of subjective fear" and objective facts about Thraiyappah's Tamil ethnicity, without credible testimony, were not enough to establish a fear of future persecution. *Id.* at 597. Thus, the BIA did not err in holding that Thraiyappah's asylum claim was foreclosed by the adverse credibility determination.

Pursuant to his CAT claim, Thraiyappah offered additional non-testimonial evidence that could independently establish that he is entitled to CAT relief. Thraiyappah submitted the following evidence: (1) human rights reports and articles describing country conditions in Sri Lanka; (2) copies of his various national identification documents; (3) letters from his wife, mother, friend, a member of Parliament, and Sri Lanka Secretary Sri Nagathambiran Alayam-Akkaraipattu; and (4) his father's death certificate, confirmation that his father was killed in a massacre by Sri Lankan armed forces, and articles about the massacre. The adverse credibility determination was not dispositive of his CAT claim because Thraiyappah offered this additional independent evidence. Notwithstanding this evidence, the BIA found the adverse credibility determination dispositive of his CAT claim. But there is no indication that the BIA considered this

No. 21-60092

additional independent evidence.  As a result, we vacate and remand on Thraiyappah's CAT claim for the purpose of allowing the BIA to consider the independent evidence. *See Arulnanthy*, 17 F.4th at 598; *see also* 8 C.F.R. § 1208.16(c)(3).

## CONCLUSION

Because the adverse credibility determination was not dispositive on the CAT claim and Thraiyappah offered independent, non-testimonial evidence, we GRANT the petition, VACATE in part and REMAND to the BIA.