# United States Court of Appeals
# for the Fifth Circuit

—————————

No. 24-40658

—————————

United States Court of Appeals
Fifth Circuit

**FILED**
January 8, 2026

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LIZA GARCIA,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CR-1019-2

———————————————————————

Before SMITH, STEWART, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

Liza Garcia pleaded guilty to a drug-related money laundering offense. Garcia now challenges the district court's calculation of her base offense level. We reject her arguments and AFFIRM.

## I.    Background

Garcia and an unindicted coconspirator, her boyfriend, recruited David Apaseo to transport narcotics into the United States from Mexico.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-40658

Apaseo, who was also dating Garcia's daughter, was arrested in April 2021 at a border checkpoint in Hidalgo, Texas. In Apaseo's vehicle, officers found cocaine, methamphetamine, heroin, and fentanyl concealed in automobile parts.[1]

In a post-arrest interview, Apaseo explained that he was transporting the narcotics to Houston, Texas. He stated that he had previously completed other trips, which involved transporting narcotics from Mexico to Austin, Houston, and Dallas, Texas. Ordinarily, Apaseo would receive instructions for these trips from Garcia's boyfriend and would be paid in cash upon delivery.

An investigation revealed that, after receiving payments for deliveries, Apaseo and Garcia would send proceeds to Garcia's boyfriend or his intermediaries using money service businesses. Apaseo stated that he began sending proceeds this way at Garcia's direction, and she instructed him on how to complete the transfers. During the investigation, Garcia's niece explained that Garcia had asked her to send money to Mexico multiple times and would accompany her to complete these transactions. Financial records revealed that Garcia sent at least $10,300 to intermediaries in Mexico. Garcia's niece also sent approximately five payments between January and February 2021, totaling at least $6,654, to intermediaries in Mexico.

In a twelve-count superseding indictment, Garcia and Apaseo were charged with a number of crimes including conspiracy to import controlled substances, conspiracy to possess with the intent to distribute controlled substances, and possession with intent to distribute a controlled substance.

_____

[1] Garcia was originally going to transport the narcotics, but she had to report to work instead. She had previously transported narcotics from Mexico into the United States on multiple occasions.

No. 24-40658

Garcia was also charged individually with money laundering. Garcia pleaded guilty to Count 10 of the indictment—money laundering with the intent of concealment between September 2020 and April 2021, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (2). Garcia admitted that she knowingly conducted financial transactions affecting interstate commerce "on at least three occasions to transmit a total of at least $3,961 . . . to at least two different people in Mexico," and that "[she] knew that at least some portion of the money involved was derived from some form of unlawful activity."

The probation officer writing the Presentence Investigation Report ("PSR") applied Guideline § 2S1.1(a)(1) to determine Garcia's base offense level for her money laundering conviction. The PSR determined that Garcia was responsible for the drug quantities found in Apaseo's vehicle in April 2021. The probation officer then converted these quantities into a converted drug weight using Guideline § 2D1.1, leading to a base offense level of 38.

Garcia objected to the PSR, arguing that § 2S1.1(a)(1) was inapplicable and that § 2S1.1(a)(2) should apply instead, which would lead to a base offense level of 8. Garcia asserted, among other arguments, that she did not commit the April 2021 offense and that, in any event, the April 2021 offense could not support § 2S1.1(a)(1)'s application because those narcotics were intercepted and did not generate any funds.

The district court held three sentencing hearings over time addressing this sentencing very thoroughly. The first hearing was in July 2024. The district court determined that Garcia was involved in the broader conspiracy but stated that it needed more time to research § 2S1.1(a)(1)'s application because the laundered funds were not proceeds from the seized narcotics. The second hearing was held in August 2024. The district court reiterated that Garcia was involved in the drug trafficking conspiracy and decided that it would convert the amount of money she had laundered into drug quantities

3

to determine her base offense level under § 2S1.1(a)(1). Garcia objected to this methodology, contending that several variables were unknown, including whether she was involved in trafficking the same drugs seized in April 2021. In response, the district court scheduled a third and final sentencing hearing in October 2024 to allow the Government to present witnesses to testify to the prices of the various narcotics seized in April 2021.

At the third sentencing hearing, an agent with the Department of Homeland Security testified that, *inter alia*, the per kilogram prices of methamphetamine, fentanyl, and heroin would have been $3,000, $18,000, and $20,000, respectively, in McAllen in 2021, at the time of the alleged drug trafficking conspiracy. Cocaine was not included because, when the district court asked the Government whether there was cocaine in the April 2021 load, the Government responded that it included only methamphetamine, fentanyl, and heroin. The district court rejected Garcia's various objections, including to the testimony regarding prices, the application of § 2S1.1(a)(1), and the amount of laundered funds.

The district court found that Garcia had laundered at least $10,300 and calculated the kilogram quantities of methamphetamine, fentanyl, and heroin that could be bought for $10,300 based on the agent's testimony about drug prices. The district court, excluding cocaine from the calculation, concluded that the base offense levels for methamphetamine, fentanyl, and heroin were 32, 30, and 26, respectively, based on the drug quantity table in § 2D1.1(c). The district court then determined that the average base offense level for these three drugs would be 28.[2] Working from a base offense level of 28, the district court calculated Garcia's total offense level as 25. The

_____

[2] We note that the average of these base offense levels would actually be 29, so this mistake was a benefit to Garcia.

district court determined the Sentencing Guidelines range to be 57 to 71 months of imprisonment and sentenced Garcia to 57 months. Garcia timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. Because this is an appeal from a final judgment, we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

"We review the district court's factual findings for clear error and its application of the [Sentencing] Guidelines de novo." *United States v. Sifuentes*, 945 F.3d 865, 868 (5th Cir. 2019). A district court's "factual findings are clearly erroneous only if . . . we are left with the definite and firm conviction that a mistake has been committed," based on all the evidence. *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020) (citation modified). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (citation omitted). Where, however, a defendant's argument on appeal differs from the basis of her objection in the district court, we review for plain error. *United States v. Rojas*, 812 F.3d 382, 390–91 (5th Cir. 2016).

## III.    Discussion

Garcia and the Government disagree about which subsection of Guideline § 2S1.1(a) should apply and, if § 2S1.1(a)(1) is applicable, about the district court's calculation.

Guideline § 2S1.1(a) supplies the base offense level for a money laundering offense. Guideline § 2S1.1(a)(1) "applies the offense level for the underlying offense from which the laundered funds were derived if (A) the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the underlying offense, and (B) the offense level

can be determined." *Sifuentes*, 945 F.3d at 868; *see also* U.S.S.G. §§ 2S1.1(a)(1), 1B1.3(a)(1)(A). If the defendant is not responsible for the underlying offense or "the offense level for the underlying offense is impossible or impracticable to determine," § 2S1.1(a)(2) applies instead. U.S.S.G. § 2S1.1 cmt. n.3(A); *see also Sifuentes*, 945 F.3d at 868. Where that is the case, the district court determines the offense level based on the value of the laundered funds. U.S.S.G. § 2S1.1(a)(2); *United States v. Charon*, 442 F.3d 881, 887 (5th Cir. 2006).

Garcia presents three issues on appeal. She contends that § 2S1.1(a)(1) should not have been applied to calculate her base offense level for two reasons: first, because she did not commit the underlying offense of drug importation, and, second, because the underlying offense level cannot be determined. Garcia's third contention is that, even if application of § 2S1.1(a)(1) were appropriate, the district court incorrectly calculated the base offense level. The evidence shows otherwise, so we disagree with Garcia on each point.

### A.   Garcia is responsible for the underlying offense

With respect to § 2S1.1(a)(1)'s first condition, the district court properly concluded that Garcia can be held accountable for the underlying drug trafficking conspiracy.

Garcia's assertion that she is not responsible for the underlying offense incorrectly assumes that the district court concluded that the April 2021 transport qualified as the underlying offense. But that is incorrect. Instead, the district court understood that the underlying offense was the drug trafficking conspiracy. During the first sentencing hearing, the district court found by a preponderance of the evidence that Garcia "was involved in this conspiracy where drugs were coming across and money was going back."

It reiterated this finding during the second sentencing hearing by referencing evidence demonstrating that Garcia "was involved in this drug conspiracy."

On appeal, Garcia does not challenge the district court's factual finding that she was involved in the drug trafficking conspiracy. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (holding that a defendant abandons her "arguments by failing to argue them in the body of [her] brief"). But even if she did, there is sufficient evidence in the record to support the district court's factual finding that Garcia was involved in the conspiracy. For example, the PSR explains that: Garcia instructed Apaseo to send proceeds through money service businesses to her boyfriend or intermediaries; Garcia had transported drugs from Mexico to her home in Edinburg, Texas on six or seven prior occasions; and Garcia asked her niece to send money to Mexico through money service businesses and would accompany her niece to complete these transactions. A PSR generally "bears sufficient indicia of reliability to permit the sentencing court to rely on it," and, because "[t]he defendant bears the burden of demonstrating that the PSR is inaccurate," a district court may properly rely on and adopt the PSR "in the absence of rebuttal evidence." *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995).

Based on the evidence in the PSR, the district court did not clearly err in finding that Garcia was involved in the drug trafficking conspiracy. Indeed, "there is sufficient evidence from which the district court concluded that [Garcia] at least aided and abetted the distribution of drugs from which the laundered funds were derived."[3] *Sifuentes*, 945 F.3d at 869.

_____

[3] Garcia does not argue in her briefing that a drug conspiracy cannot be an "underlying offense" as a matter of law, so this argument is forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by . . . failing to adequately brief the argument on appeal."); *see also Yohey*, 985 F.2d at 224–25. But, at

No. 24-40658

## B.    The underlying offense level can be determined

As to § 2S1.1(a)(1)'s second condition, the district court correctly concluded that the underlying offense level was determinable. Garcia contends otherwise by asserting that the base offense level for the underlying drug offense cannot be determined because the underlying type and quantity of drugs involved were not identified. But we disagree given what was shown to the district court.

Garcia admitted to knowingly laundering funds that were derived from unlawful activity. Before the district court, the Government demonstrated a likelihood that drug sales occurred, and Garcia laundered the resulting proceeds by a preponderance of the evidence. *See Sifuentes*, 945 F.3d at 868.

Where the offense underlying a money laundering conviction is a drug offense, the offense level "can be determined by using the drug quantity table in § 2D1.1(c)." *Charon*, 442 F.3d at 888. Under Guideline § 2D1.1, "[w]here there is no drug seizure . . . , the court shall approximate the quantity of the controlled substance." *Barry*, 978 F.3d at 217 (quoting U.S.S.G. § 2D1.1 cmt. n.5). As the Government points out, "district courts may consider estimates of the quantity of drugs involved in the offense." *Id.* at 218 (citing *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)). Then, so long as the district court is convinced by a preponderance of the evidence "that money came from relevant drug sales, it may convert the money to a drug quantity." *Id.* (citing *United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2005)).

---

any rate, this was likely not erroneous. *See also United States v. Mata*, 409 F. App'x 740, 743 (5th Cir. 2011) (per curiam) (unpublished) (applying § 2S1.1(a)(1) based on an underlying drug conspiracy). Although *Mata* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

When determining the drug quantity, the district "court may extrapolate . . . from any information that has sufficient indicia of reliability to support its probable accuracy." *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019) (citation omitted).

On this record, and as discussed further below, the district court did not err by applying § 2S1.1(a)(1) to determine Garcia's base offense level because there is sufficient information about the underlying drug conspiracy to determine the base offense level for Garcia's conviction. This is not a case where "the offense level for the underlying offense is impossible or impracticable to determine." U.S.S.G. § 2S1.1 cmt. n.3(A). Rather, courts often establish drug quantities based on known amounts of cash. *See Barry*, 978 F.3d at 218; *see also United States v. Anderson*, 526 F.3d 319, 325–27 (6th Cir. 2008) (holding that application of § 2S1.1(a)(1) was appropriate where the drug quantity was unknown because the defendant was involved in the drug conspiracy, and the quantity of drugs for which the defendant was responsible could be approximated). Accordingly, the district court did not err by using § 2S1.1(a)(1) to find Garcia's base offense level.

### C.    The district court's calculation does not warrant reversal

Garcia last takes issue with the district court's methodology for calculating her base offense level under § 2S1.1(a)(1). She contends that the district court's calculation was erroneous for a few reasons. We disagree and reject each assertion below.

Garcia takes issue with the amount of funds that the district court found her to have laundered. We review the district court's finding for clear error because Garcia raised this argument in the district court. We conclude that the district court did not clearly err by adopting the PSR's finding that she was responsible for laundering $10,300. As noted above, district courts may ordinarily rely on a PSR's findings unless the defendant shows that the

findings are inaccurate. *Ayala*, 47 F.3d at 690. Garcia has not presented sufficient evidence to rebut the PSR's finding that she laundered $10,300, so she has failed to demonstrate that the district court clearly erred by relying on this figure.

Garcia also takes issue with the drug prices the district court used to determine her base offense level. We review the district court's finding on this point for clear error. Contrary to Garcia's assertion, the district court did not clearly err by using wholesale values for the drug prices rather than "street" values. "Whether a court considers the 'wholesale' or 'retail' price of a drug as the denominator depends on the quantity the defendant ordinarily deals in." *United States v. Lujan*, 25 F.4th 324, 328 (5th Cir. 2022). Here, Garcia has failed to demonstrate that the drug trafficking involved street-level sales, as opposed to the distribution of multi-kilo loads across the border. As such, wholesale values were appropriate.

Garcia additionally contends that the district court clearly erred by calculating her base offense level based on an unknown drug quantity. Garcia preserved this objection below, but she cannot demonstrate that the district court clearly erred. As noted above, when calculating a base offense level for an underlying drug offense, district courts may extrapolate from reliable information, *Barfield*, 941 F.3d at 762, and convert an amount of money into an approximate drug quantity, *Barry*, 978 F.3d at 217. Here, aiming to be cautious, the district court relied on the narcotics involved in the April 2021 load to convert the $10,300 Garcia laundered into a drug quantity and find her base offense level under § 2S1.1(a)(1). In doing so, the district court implicitly found that the April 2021 load was emblematic of the larger drug conspiracy's activity. In other words, the district court considered the April 2021 load to be a representative subset of the drug types and quantities distributed throughout the entire drug conspiracy. Garcia has failed to demonstrate that the use of such a methodology was clearly erroneous.

Indeed, when extrapolating from reliable evidence, the district court's estimates need not be exact. *See, e.g.*, *Alford*, 142 F.3d at 831–32 (relying on imprecise testimony of drug amounts for the total amount-calculation was not clear error). The district court's calculation "was carefully considered, conservative, and based on the evidence presented." *Betancourt*, 422 F.3d at 247 (citation omitted). For instance, the district court strayed away from using the quantities contained in the seized April 2021 load, though it likely could have used those quantities to calculate the base offense level. *See Charon*, 442 F.3d at 888–89 (explaining that the "underlying offense" includes all relevant conduct). Using the above methodology instead resulted in a sentencing range that was "a third of her original Guideline sentence."

Garcia next points out that the district court omitted cocaine from its calculation. But Garcia did not raise this objection in the district court, so we review only for plain error. "On plain-error review, we will reverse only if (1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights." *Rojas*, 812 F.3d at 391 (alteration in original). Then (4) "[e]ven if these conditions are met, the decision whether to correct a forfeited error remains soundly within our discretion." *Id.* Here, the district court's omission of cocaine was not plain error because it did not affect Garcia's substantial rights. As the Government points out, the inclusion of cocaine in the district court's calculation would not have changed the resulting base offense level. The district court concluded that $10,300 of each drug would result in a base offense level of 32 for methamphetamine, 30 for fentanyl, and 26 for heroin. The district court then concluded that the average of these values was 28—but it is actually 29. Garcia contends that $10,300 of cocaine would have resulted in an offense level of 24. Adding that number into the district court's calculation would have led to an average of 28 for the base offense level—the same base offense level that the district court applied. Accordingly, Garcia has failed to

11

demonstrate that the district court's exclusion of cocaine from its base offense level calculation under § 2S1.1(a)(1) affected her substantial rights. Even if we had to reach the fourth item of plain error, we would not exercise our discretion to rule in favor of Garcia on this point given the many drugs she handled.

Finally, Garcia asserts that the district court erred by failing to calculate the converted drug weight as required by the Sentencing Guidelines. We review for plain error because Garcia did not raise this objection before the district court. Garcia has failed to explain in her briefing how the court plainly erred by neglecting to use the converted drug weight in a case such as this, where the district court is approximating unknown quantities of drugs, or how any such error affected her substantial rights. But even if the three prongs of plain error review were satisfied, given that we have "the *discretion* to remedy the error," "which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citation modified). This is not such a case. Here, the district court worked very cautiously to calculate Garcia's base offense level using only the $10,300 that the court determined she had laundered.  The district court could have found much more, so we do not conclude it was error. Indeed, the district court's sentence was a third of that recommended in the PSR. Even if failing to use the converted drug weight met the first three parts of the plain error, this would not be an appropriate case to exercise our discretion to remedy the error. *See, e.g.*, *United States v. Mims*, 992 F.3d 406, 411 (5th Cir. 2021).

## IV.    Conclusion

For the foregoing reasons, Garcia's sentence is AFFIRMED.